Mayhew *v.* Burns.

No. 11,273.

MAYHEW *v.* BURNS.

PARENT AND CHILD.—*When Father May Maintain Action in His Own Right for Death of Child.—Cases Modified and Approved.*—Under section 266, R. S. 1881, a father, during the continuance of the relation of parent and child, may maintain an action in his own right for damages caused by the death of his child. *Gann v. Worman,* 69 Ind. 458, modified, and *Pennsylvania Co. v. Lilly,* 73 Ind. 252, approved.

SAME.—*When Action Must be Brought by Personal Representative.*—Where the relation of parent and child does not exist, the action, under section 284, R. S. 1881, must be brought by the personal representative, regardless of the age of the person whose death has been caused.

MARRIED WOMAN.—*Liability for Tort.*—A married woman, for a tort committed by the violation of any duty imposed upon her by law with respect to her separate property, is liable to the same extent as if she were unmarried.

NEGLIGENCE.—*Excavation Causing Pitfall upon Adjoining Lot.—Parent and Child.*—One who makes an excavation upon his lot in such a manner as to cause a pitfall upon an adjoining lot is liable, in the absence of contributory negligence, to one who resides upon the latter, for the death of his child caused by falling into such pit.

SAME.—*Evidence.—Care of Children.— Pecuniary Condition of Father.—Contributory Negligence.*—Where one is suing for the death of his child alleged to have been caused by the negligence of another, evidence that the plaintiff is poor, and not able to employ any one other than his housekeeper to take care of his children, is not admissible upon the question of contributory negligence.

SAME.—*Knowledge of Danger.—Duty to Avert.*—Where one knows of danger which threatens injury to himself or those to whom he is bound to afford protection, and he can by reasonable exertion avert it, his negligent failure to do so will prevent a recovery.

TRESPASS.—*Abating Nuisance.*—Where one creates a dangerous nuisance upon the property of another, the latter, for the purpose of abating it, may go upon the property of the former without becoming a trespasser.

From the Allen Superior Court.

*J. Morris, C. H. Aldrich* and *J. M. Barrett,* for appellant. *H. Colerick* and *W. S. Oppenheim,* for appellee.

MITCHELL, C. J.—James Burns brought this action against Sarah Mayhew, to recover damages for wrongfully causing the death of his infant child.

Mrs. Mayhew is a married woman, and the wrong complained of is, that being the owner of lot 24, in one of the additions to the city of Fort Wayne, she caused an excavation, for a privy vault, to be made on her lot, so near the division line between it and lot 23, on which the plaintiff lived, as that two feet of the soil from plaintiff's lot, and the division fence between the two, fell into the excavation. It was averred that the excavation was negligently permitted to remain open and unguarded, notwithstanding the plaintiff, upon discovering its dangerous condition, gave notice to the defendant, and requested that it be made safe. The plaintiff was a widower with five children. The children, with his household, were in the care of his sister-in-law, who was competent to have them in charge. While in her charge, his son, aged two years, fell into the excavation, which was filled with water, and was drowned. It is alleged that this occurred without fault or negligence on the part of the plaintiff.

He claims damages for the loss of the services and society of his child from the time of his death until he should have attained his majority. The action is brought by the father in his own right.

At the threshold we are met with the objection that a father can maintain no action, in his own right, to recover for the death of his child, or for the loss of services of one whose death has been caused by the wrongful act or omission of another. It is said there is no statute in force in this State giving the right, and that none exists by the common law. That it was the settled rule of the common law that the death of a human being could not be complained of as an injury in a civil court, is a proposition universally admitted, both in England and in this country. A parent might and still may, without any statute, recover for loss of services resulting from a wrongful injury to his child during the period of disability occasioned by such injury, and if death resulted, for the loss of service during the time between the injury and death. In addition, a parent had his common law

remedy to recover for such incidental damages, as for medical attendance, care and nursing, up to the time of death, if death resulted. This was upon the theory that the parent was entitled to the services of the child at the time the injury was inflicted, and owed the child the corresponding obligation of care, nursing and medical attendance. If the right to the child's service or the duty of care and maintenance was at an end, then no right of action for an injury existed in favor of the parent.

Where death resulted instantaneously, or practically so, and no incidental expenses accrued, no action whatever was maintainable by the parent after the death of the child.

The claim which is pressed in the argument is, that the complaint counts upon a common law right, none having been given by statute, and that inasmuch as the injury and death occurred at the same time, and as no incidental expenses are alleged, it is contended, the complaint states no cause of action.

The argument that there is no statute giving a right of action to the father for an injury causing the immediate death, or for the lost services, of his minor child, is rested mainly, if not entirely, on what is said in *Gann* v. *Worman*, 69 Ind. 458. It was said in that case that "There is no statute in this State giving the father the right of action for the lost services of his child, after the child's death." It was also held in that case, as also in one or two others which preceded it, that sections 27 and 784 of the code of 1852—sections 266 and 284 of the present code—were to be construed together, and, when so construed, it resulted that the right of action given to the parent by section 27 was given not for his benefit, but as the representative of the deceased child, and that the damages recoverable in an action under that section inured to the benefit of the next of kin under section 784. *Pittsburgh, etc., R. W. Co.* v. *Vining's Adm'r*, 27 Ind. 513; *Cincinnati, etc., R. R. Co.* v. *Chester*, 57 Ind. 297.

The later case of *Pennsylvania Co.* v. *Lilly*, 73 Ind. 252,

as also the earlier, *Ohio, etc., R. R. Co.* v. *Tindall*, 13 Ind. 366, proceeded with apparent recognition of the right by both parties, upon the theory that the parent had the right to recover the value of a child's services, although death in both cases was instantaneous.

In the case of *Pennsylvania Co.* v. *Lilly, supra,* it was said: " It is well settled that, in an action by a parent for the death of his child, he is entitled to recover only for the pecuniary injury he has sustained, and that the proper measure of damages is the value of the child's services from the time of the injury until he would have attained his majority, taken in connection with his prospects in life, less his support and maintenance. To this may be added, in proper cases, the expenses of care and attention to the child, made necessary by the injury, funeral expenses and medical services." This last case proceeded upon the theory that the damages thus defined might be recovered by the father in his own right, and nothing was said in relation to either section of the statute above mentioned.

The case of *Ohio, etc., R. R. Co.* v. *Tindall, supra,* clearly recognized the right of the parent to sue as such. It was there held that as the mother—the father having died—was entitled to the wages of her deceased son, she was damaged by his death, and might therefor maintain the action. Referring to the statutes above mentioned the court said : " These two statutes may be reconciled and given effect to, by holding the latter " (784) "applicable to the cases of adults, and the former to those of infants."

The question was suggested incidentally in *Binford* v. *Johnston*, 82 Ind. 426 (42 Am. R. 508). The complaint was held sufficient in that case because it was averred in one of the paragraphs that the father had expended money and rendered services in endeavoring to cure his son, and that he lost his services from the time of the injury to his death. These averments constituted the statement of a good cause of action, even at common law, and as it was not necessary to

do so, it was not there determined whether or not the statute gave a right of action to a father for the death or lost services of his child after its death. It would seem fit that the question should have farther examination.

The statutes involved in the consideration of the question are sections 266 and 284 of the present code. These sections correspond in all material respects with sections 27 and 784 of the code of 1852.

Section 266 is as follows: "A father (or in case of his death, or desertion of his family, or imprisonment, the mother) may maintain an action for the injury or death of a child, and a guardian for the injury or death of his ward. But when the action is brought by the guardian for an injury to his ward, the damages shall inure to the benefit of his ward."

Section 284 enacts that "When the death of one is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor against the latter, if the former might have maintained an action, had he lived, against the latter for an injury for the same act or omission. The action must be commenced within two years. The damages can not exceed ten thousand dollars, and must inure to the exclusive benefit of the widow and children, if any, or next of kin, to be distributed in the same manner as personal property of the deceased."

Do these statutes create distinct and independent rights, or is the proper construction of the former merely to define who are proper parties for the enforcement of the right conferred by the latter when the death of a child is wrongfully caused?

To hold that section 266 does not give a father, or mother under the contingencies stated, an independent right of action for the injury or death of his child, necessarily results in holding that it is of no practical force whatever. It is thus practically abrogated by construction. To say that the right of action given to the father for the injury or death of a child, means nothing more than that he is the proper party in whose name the right to damages given under section 284

may be enforced for the benefit of the next of kin, is to say that it gives the father no right at all. Nor does such construction in any manner enlarge or aid the right given under the latter section. That section provides that the personal representative of one whose death has been wrongfully caused may maintain the action. The right of action is not expressly limited to the age or situation of the person whose death has been caused, but the provision that the damages shall inure to the benefit of the widow and children, if any, or next of kin, implies that there are or may be persons in that relation who were dependent upon the deceased, and who are consequently injured by his death. This could hardly occur in case the death was that of a child. It seems to us a forced and unwarrantable conclusion to say that in case the death is that of a child, section 266 is to be looked to for the purpose of ascertaining who is to sue as the representative of the next of kin; while in the case of an adult the personal representative, as defined in section 284, must sue. The reasonable and natural interpretation of the language employed in the first section is to give the parent who sustains injury by the death of his child, a remedy for such injury in his own right; while the latter gives to the widow or next of kin, through the personal representative, a right to recover for any injury which they may have sustained by reason of the death of an adult, or one emancipated from parental service, and in whose life they may have had a pecuniary interest.

By the common law the father had no right of action for lost services after the death of his child, and the effect of section 266 is to confer to that extent a new and independent right. In our view both the common law and statutory damages may be recovered under that section, as they are defined in *Pennsylvania Co.* v. *Lilly, supra,* and, when recovered, they belong to the parent in his own right, and are not distributable under section 284. During the continuance of the relation of parent and child, the right of action is in the parent

entitled to its services.    This relation presumptively contin-
ues during the minority of the child.    *Pennsylvania Co.* v.
*Adams*, 55 Pa. St. 499 ; *North Penn. R. R. Co.* v. *Kirk*, 90
Pa. St. 15 ; *Pennsylvania R. R. Co.* v. *Zebe*, 33 Pa. St. 318.
If the relation does not exist, then the action is to be brought
by the personal representative, regardless of the age of the
person whose death has been caused, provided there are
persons sustaining such relation as that they may be sup-
posed to have sustained pecuniary injury on account of such
death.    If the relation of parent and child continues after
majority, the parent receiving support or service may never-
theless maintain the action.    In such case, the reasonable ex-
pectation of pecuniary advantage by the relation remaining
may be taken into account, and damages given for the proba-
ble pecuniary loss occasioned.    *Dalton* v. *South-Eastern R.
W. Co.*, 4 C. B. N. S. 296 ; *Franklin* v. *South-Eastern R. W. Co.*,
3 H. & N. 211 ; *Pennsylvania Co.* v. *Adams, supra.*    This
view accords with the construction given similar statutes in
England and some of the states in this country, and does
not expose the wrong-doer to the hazard of being twice sued
for the same wrong, as was suggested might be the case in
*Pittsburgh, etc., R. W. Co.* v. *Vining's Adm'r, supra.*    Where
the death wrongfully caused is that of a child owing service
to the parent, the pecuniary interest which its next of kin can
have in its life is so remote and subject to so many contin-
gencies that it would be little less than speculation to say
they had any interest which could afford a basis for esti-
mating damages.    In such case, the right of action is in the
parent or guardian, under section 266.

Where the wrongful act or omission occasions the death of
an adult, or one not in the service of his parent, or in whose
life a widow, children or next of kin may, on account of their
relation or situation, have a pecuniary interest as such, the right
of action is in the personal representative for their benefit,
and in such case the right is exclusively under section 284.

This we think is what was meant when it was said in *Ohio,*

*etc., R. R. Co.* v. *Tindall, supra,* "These two statutes may be reconciled and given effect to, by holding the latter applicable to the cases of adults, and the former to those of infants."

Certainly, any other construction practically abrogates the one and gives an interpretation to the other which does not arise out of the language employed in either.

It must be considered that these statutes are the means of introducing into our system principles wholly foreign and unknown to the common law. The first, by adding to the common law right, which the father had, the further right to maintain an action for the death of a child. The second, by giving to the widow, children or next of kin, through the personal representative, a right to recover for the loss which they had sustained on account of the death of one in whose life they may have had a pecuniary interest.

Under the first section, the damages recoverable are arrived at from a consideration of the probable value of the child's services from the time of the injury until it would have attained its majority, taken in connection with its expectancy and prospects in life, less the probable cost of support and maintenance; added to this the expenses of care, attention, etc., made necessary by the injury, as stated in *Pennsylvania Co.* v. *Lilly, supra.*

Under the second section, it is evident the damages are to be considered in each case according to its circumstances. In assessing damages resulting to the wife, children or next of kin, the ability of the deceased to have provided for the support and education of those dependent upon him, the number and degree of kindred mentioned in the statute, and their dependence upon him for support, are important considerations.

Although it is not necessary to the maintenance of the action for the next of kin that the deceased should have been under a legal obligation to render them support, it is nevertheless of consequence that their relation and situation should be shown with a view of affording a basis upon which to de-

termine the amount of pecuniary loss sustained. 2 Williams Ex'rs (6th Am. ed.), p. 874, note *d*.

The two sections above quoted were, we think, intended to accomplish the same end as the statutes 9 and 10 Vict., c. 93, commonly known as Lord Campbell's Act.

These views find support more or less remotely in the cases already cited, and in the following, among other, cases, which, while they are under statutes not entirely like those above set out, nevertheless afford some analogy in principle. *Walters* v. *Chicago, etc., R. R. Co.*, 36 Iowa, 458; *Whitford* v. *Panama R. R. Co.*, 23 N. Y. 465; *Needham* v. *Grand Trunk R. W. Co.*, 38 Vt. 294; *Ohio, etc., R. R. Co.* v. *Tindall, supra.*

The conclusion thus reached results in the approval of *Pennsylvania Co.* v. *Lilly, supra,* and in modifying *Gann* v. *Worman, supra,* and to some extent the other cases giving the like construction to statutes above set out.

The suit having been brought by the father as such, it was, therefore, not necessary to aver who were the next of kin, or that there were any.

It is further contended that the complaint was bad, because it is said, notwithstanding the averment that the plaintiff was without fault, there arises from the facts stated therein such a presumption as shows contributory negligence on his part. That such might be the case, has frequently been held. *Bedford, etc., R. R. Co.* v. *Rainbolt*, 99 Ind. 551, and cases cited. We think, however, in this case, the specific statement of facts is not such as to enable the court to say, as matter of law, that the plaintiff was guilty of negligence, over the general averment that he was without fault.

It is also made a question whether the wife can be sued separately in tort and held liable, where it appears, as it is contended it does in this case, that the wrong committed was the joint tort of the husband and wife, and presumably committed in his presence. Without reference to the rule of the common law upon this subject, married women are now by statute made liable, and an action may be prosecuted against

them, for torts committed, as if unmarried. Section 5120, R. S. 1881. Where the wrong relates to the use or management of their separate estates, as in this case, the torts of married women, committed by the violation of any duty imposed upon them by law with respect to such estates, create the same liability against them as if they were unmarried. And this would be so without regard to the statute above referred to, under the maxim *sic utere*, etc. Having been relieved of their disabilities and empowered to own and control separate estates as *femmes sole*, they take the right with all its incidents, and must, therefore, like all other persons, use their property with due regard for the rights of others. *Rowe* v. *Smith*, 45 N. Y. 230; *Vanneman* v. *Powers*, 56 N. Y. 39; *Baum* v. *Mullen*, 47 N. Y. 577; Cooley Torts, 118.

We think section 5121, R. S. 1881, which provides that when a married woman commits a tort by the direction of the husband, etc., she shall be jointly liable with him, relates to the mere personal torts of the wife, and has no application to a case like this.

It is contended that in making the excavation on her lot, the appellant was in the exercise of a lawful right, and that the extent of her liability in making it so near the division line as to cause the earth from the lot occupied by the plaintiff to fall into the excavation, was to pay for the subversion of the earth thus occasioned. We think this view of the case can not be maintained. The right to make the excavation on her lot may be conceded, but to do so in such manner as to remove the lateral support from the other, and by that means cause a pitfall thereon, was to commit a nuisance. If, without the plaintiff's fault, his child fell into the pit thus formed, and the loss of its life resulted, the defendant is liable. Cooley Torts, 594. The demurrer to the complaint was properly overruled.

At the trial the plaintiff gave testimony tending to show that he was a widower, and by occupation a helper in a black-

smith shop; that his eldest child was thirteen, and the youngest, the one drowned, two years of age; that his sister-in-law, a competent person for that purpose, had the charge of his household and children.

There was also evidence showing that the plaintiff had been informed of the dangerous condition of the excavation in his back lot, and that he had given notice to the defendant's husband to make it secure. He was also informed that a few days before the death of his child one of its older brothers, Eddie, had fallen into and had been rescued by the housekeeper from the same place.

The evidence tended to show that the housekeeper, at the time of the occurrence which resulted in the death complained of, was engaged about the necessary duties of the household, having permitted the child to go temporarily into the back yard under the supervision of its elder sister. That she had observed it but a moment before sittting near its sister and another child, and upon looking again missed it, and subsequently recovered its body from the excavation, too late to save its life.

In this state of the evidence, the plaintiff, being on the witness stand, was asked the following question: "Tell the jury what property you own." Over objection he was permitted to answer, and said: "I have no property; I am a poor man, and was not able to employ anybody else to take care of my children."

In support of the ruling of the court in admitting this evidence, it is contended that the pecuniary condition of the plaintiff was material to be considered in determining whether or not he was guilty of contributory negligence. The argument is that the plaintiff was not bound to confine his child to the house, and that if he was unable to employ a nurse or other attendant, negligence should not be imputed to him.

If it should be conceded that the pecuniary condition of one to whom negligence was imputed should be considered in any case, for the purpose of determining whether or not

he was negligent, we can discover no reason for considering it in this case. Whether the plaintiff was negligent or not, depends upon his personal conduct, considered with reference to the danger, of the presence of which he had knowledge. The inquiry involved the acts or omissions of the plaintiff, and those having the care of his child, as such acts or omissions related to the danger, the child, and the knowledge of facts with which they were chargeable.

Neither of the parties to this suit could excuse his negligence, if he was negligent, by bringing either his own or the other's pecuniary condition into the controversy, nor could the fact of negligence be determined in that way. If the defendant committed a nuisance by wrongfully causing a pitfall on the plaintiff's lot, she could not escape liability by showing that she was poor and the plaintiff rich. It would have availed her nothing to show that the plaintiff might have employed more servants to attend his house, or nurses for his child. Nor was it necessary for the plaintiff to offer any excuse or apology for not employing nurses or attendants. The question related to his own care, and the prudence and judgment of those to whom the care of his child was actually committed.

It can not be assumed that every person who is pecuniarily able to do so employs, or must employ, an attendant for his child or a servant to assist his housekeeper. Wives and housekeepers of every degree of fortune may choose to attend their own households and children, and no wrong-doer may excuse his wrong by asserting negligence against them on account of their choice. What some must do, in respect of denying themselves servants, or their children attendants, every other may do, and whether done from choice or necessity, negligence can not be predicated upon the one or excused by the other. Whether one was negligent or not in a given case, must be determined by considering his or her conduct as it related to the particular circumstances of the occasion or affair, out of which the case arises.

It can not be solved by showing their general pecuniary condition. Their ability to act and what they did or omitted to do with reference to the particular emergency, is all that is important. All that was necessary for the plaintiff to show in this case was the actual situation of his household, and that neither he nor those to whom he had intrusted his child were guilty of any act or omission in relation to the child and the excavation into which it fell. This was a question of conduct, not of property. The ability to apprehend and guard against the danger when apprehended, and the acts and omissions of the plaintiff and his housekeeper after the facts were known, were all the subjects material to the inquiry. His duty as it related to his child, and the source of danger were the same whether his household was managed as it was from choice or necessity. It would be monstrous to assume that the care or solicitude of a parent for the safety of a child in respect of danger to its person had any relation to his pecuniary condition. We may say at once that if any negligence was imputable to the plaintiff, it did not relate to the want of a suitable housekeeper, or the want of attendants for his child.

The pertinent inquiry was, how came it that the excavation was left unguarded after knowledge of its existence? Did the plaintiff or his housekeeper omit any act or precaution which ordinary prudence would have suggested, under the circumstances of which they had knowledge, and which in the situation in which they actually were they might have taken? That it was competent for him to show where and how his family were situate, and how he was employed, we have no doubt. But whether he lived at the place or in the manner he did, or was employed as he was from one cause or the other, could make no difference.

We find no case in which the question here raised has been directly ruled. Cases are cited in which judges, in the course of their opinions, have given expression to sentiment, which on a casual survey might seem to justify the introduction of

Mayhew v. Burns.

such testimony as that admitted.   Such are the following:
*Isabel* v. *Hannibal, etc., R. R. Co.*, 60 Mo. 475;   *O'Flaherty* v.
*Union R. W. Co.*, 45 Mo. 70;   *Pittsburyh, etc., R. W. Co.* v.
*Pearson*, 72 Pa. St. 169;   *Kay* v. *Pennsylvania R. R. Co.*, 65
Pa. St. 269;  S. C., 3 Am. R. 628;  *Philadelphia R. R. Co.*
v. *Long*, 75 Pa. St. 257;   *Chicago, etc., R. R. Co.* v. *Gregory*,
58 Ill. 226;  *Hoppe* v. *Chicago, etc., R. W. Co.*, 61 Wis. 357;
*Walters* v. *Chicago, etc., R. R. Co.*, 41 Iowa, 71.

Without entering upon an examination of the cases, we
are content to say, after the fullest consideration, that we
think no principle can be found upon which the admissibility
of the evidence can be vindicated.

The law does not set up one standard by which to deter-
mine the rights or measure the conduct of the rich, and an-
other for the poor.   Its protecting shield is extended alike
over all.  Its pride and glory are to mete out equal and exact
justice to all, in the same scale, rich and poor alike.   In this,
all find security and protection.   *Hagan's Petition*, 5 Dillon,
96;  *City of Delphi* v. *Lowery*, 74 Ind. 520;  S. C., 39 Am.
R. 98.

The cases relied on are cases where children escaped from
the observation of persons in whose care they were left, and
sustained injury by going on railway tracks.

It is said in most of these cases that parents who are poor
frequently find it necessary, while engaged about other duties,
to leave their younger children in the custody of elder sisters
or brothers who have attained to sufficient age and intelligence
to guard them from danger, and that negligence should not
be imputed to them if they escape their oversight and sustain
injury.   We should have no difficulty in saying as much, re-
gardless of the pecuniary condition of the parents.   We can
conceive of no attendant who would be more solicitous for
the welfare of an infant than its elder sister or brother, who
was of sufficient age and intelligence to be left as its guar-
dian.   It is idle to say that the propriety or impropriety of

Mayhew v. Burns.

so leaving an infant is to be determined by an inquiry concerning the amount of property the parent owns.

It is said in one case that it "can not be claimed that a laboring man, or his wife, though confined to her room by sickness, must give their personal attention and oversight to their infant child, in order to avoid the imputation of negligence. Certainly when they provide fences and gates properly secured and fastened, and placed the child in care of a proper person to take care of and watch over it, they can not be personally charged with negligence." *Walters* v. *Chicago, etc., R. R. Co.*, *supra*. The inquiry arises, would personal negligence be imputable to any one whose wife was in like condition, and who had taken like precautions for the safety of his child? What must one's occupation be in order that the law shall say he is not a "laboring man," and that he or his sick wife shall be required to give their "personal attention and oversight to their infant child," and not place it in the care of a proper person to watch over it without the hazard of being accounted negligent?

Industry and labor are the rule, and are to be commended in every station in life, and whether one is a laboring man, in the sense that instead of taking the personal supervision of his infant children, he may commit them to the care of other competent persons, can not be determined on the basis of property.

We can discover no principle upon which it can be determined whether negligence can be attributed to one, in a given case, by an inquiry into the state of his fortune. It was error to admit the testimony.

The court gave, over the objection of the appellant, the following charge:

"It devolves upon the plaintiff to show, not only the negligence of the defendant or defendants, but that the accident happened without fault on his own part or on the part of the person or persons having the care of the child. But negligence is not to be imputed to the plaintiff on the ground that

he did not go upon the lot on which the hole was dug, and either cover or fill it up or barricade the hole—such entry, without authority, upon the lot on which the hole was dug, would have been a trespass which he was not bound to commit."

We think this instruction was, to say the least, liable to mislead the jury. The jury may have understood from it that although the defendant created a nuisance on the plaintiff's lot, if, in order to abate it, it became necessary to go upon her lot to do so, special authority to that end was required.

The evidence tended to show that by reason of the removal of its lateral support, the soil from plaintiff's lot, together with part of the division fence, fell into the excavation on the defendant's. It can not be questioned that if this caused a dangerous nuisance on the plaintiff's lot, he had the right to go upon the defendant's without becoming a trespasser, for the purpose of taking up the fence and abating the nuisance. *State* v. *Flannagan*, 67 Ind. 140; Cooley Torts, p. 46.

The defendant requested the court to give the following instruction :

" If, therefore, you find from the evidence that the plaintiff had knowledge of the dangerous condition of the vault in question for two or three weeks before the death of the child, and that by reasonable caution and exertion he could have placed a fence or barricade between said vault and the lot on which he lived, and thereby have prevented the injury to his child, but negligently omitted to do so, he can not recover in this action."

This was refused. There was evidence to which the instruction asked was applicable, and we think it should have been given.

Where one knows of danger which threatens injury to himself, or those to whom he is bound to afford protection, if by reasonable exertion he can avert such injury, and negligently omits to do so, he can not recover damages when the injury which he might have prevented comes. 1 Thomp. Neg. 169.

In such cases the inquiry is, was there reasonable cause to anticipate injury from the danger of which knowledge was had, and was reasonable care taken to avert it?

It is insisted with much earnestness that the whole evidence shows that the plaintiff was guilty of contributory negligence, and that for that reason the judgment ought to be reversed. As, in our view of the case, the trial seems to have proceeded upon an erroneous theory as to what might be negligence on the part of the plaintiff, we deem it better to reverse the judgment for the errors indicated, without expressing any opinion upon the evidence, and let the case go back for such proceedings as the plaintiff may choose to take upon the law as herein laid down.

We have examined the other questions argued, and without extending this opinion to state the reasons in detail, we think there was no error in the rulings complained of other than as above indicated. For these, and upon the reasons given, the judgment is reversed, with costs.

ZOLLARS, J., did not participate in the decision of this case.

