No. 8801.

TADLOCK v. LLOYD.

1. APPEAL AND ERROR—*Verdict upon Sufficient Evidence will not be Disturbed.* Action against a physician for neglect resulting in the death of the patient. Verdict for plaintiff. There being testimony to the effect that defendant had not exercised the care necessary, proper, and customary under the circumstances, the court refused to disturb a judgment for plaintiff.

2. TRIAL—*Questions for Jury.* In an action against a physician for negligence resulting in the death of the patient, the question whether the negligence was the proximate cause of the fatal result is for the jury.

Testimony examined and held sufficient to sustain the verdict. In considering this question the difficulty of procuring positive testimony as to the cause of death, that the code of ethics of the profession is frequently a bar to the securing of such testimony, is to be borne in mind.

3. DAMAGES—*Parents' Action for Child's Death—Experience of Jurors.* An instruction directing the jury to consider, in determining the allowance to the parent, the age, health, mental and physical condition, and the disposition and ability of the child to be of aid to the parent during its minority, as well as the probable expense of rearing and educating the child, and declaring that the jury were at liberty to refer to their personal observation, knowledge, and experience, in like cases, approved. The difficulties attending the inquiry set forth and enlarged upon.

4. —— *Funeral Expenses of the Child,* are a proper element of damage, under the facts of this case.

5. INSTRUCTIONS—*Not Applicable to the Issue.* Action by parent for the death of a child, attributed solely to the neglects of the physician to give proper attention to his patient. An instruction that the possession of skill by the physician raises no presumption of its exercise, *held* not prejudicial, the question to which the instruction is directed not being involved.

*Error to Mesa District Court, Hon. Thomas J. Black, Judge.*

Messrs. WHEELER & WEISER, Mr. D. D. POTTER, for plaintiff in error.

Mr. W. S. FURMAN, Mr. JOHN F. HALDERMAN, for defendant in error.

Mr. Justice Bailey delivered the opinion of the court.

THIS action was brought to recover damages for alleged negligence on the part of a physician in failing to give proper attention to a patient. The jury returned a verdict for plaintiff for $400.00. The case is here for review on error. The parties will be designated as below.

There are numerous assignments of error, but in substance they all go to the questions whether there was sufficient evidence to support the verdict; whether, if the negligence may be held to be proved, the evidence is sufficient to show that such negligence was the cause of death; and whether there is any evidence of actual damage upon which the jury could base a verdict.

Defendant, a physician, was employed by plaintiff, the father, to attend in sickness his child, a lad five years old. Evidence was produced to the effect that defendant called as requested the first time, and after rubbing his hand across the back of the child, and taking him by the arm, diagnosed the disease as scarlet fever. That no other examination was made, nor were instructions given as to the care to be given the child, except that some pills were left with the mother to administer, with directions to bathe the child frequently. Witnesses also testified that the day following the first visit of the physician he was requested to call and see the child again; that he failed to do so, making the statement that the disease must run its course; that on the next day he was called upon to visit the child in the morning, in the afternoon, and in the evening, and on each occasion, declined to make the visit, but later, after urgent request, came to the house, the child dying shortly after his arrival. There is also testimony to the effect that the defendant expressed regret for not having visited the child when first called that day, and in effect admitted that had he done so the life of the child might perhaps have been saved.

Defendant introduced testimony contradicting specific-

ally, and in detail, every material matter relied upon by plaintiff for recovery, thus making issues of fact the determination of which by the jury should not be disturbed by this court.

It is urged, however, that even though the negligence of defendant was established, there is nothing in the record to show that the death of the child was the proximate result of such negligence. There can scarcely be a question but that, by its verdict, the jury signified its belief that defendant was negligent in failing to give attention to the case. In *Jackson v. Burnham,* 20 Colo. 523, 39 Pac. 577, this court discussed the nature and extent of the obligation assumed by a physician in treating a patient, and on page 537 (39 Pac. 579) occurs the following:

"We think that the instructions, taken as a whole, correctly define the nature and extent of the obligation that a physician or surgeon assumes when he accepts employment in his professional capacity. They certainly embody the law on the subject as uniformly laid down by text writers and announced in the adjudicated cases. They state, in substance, that by holding himself out to the world as a physician and surgeon, he impliedly contracts that he possesses the reasonable degree of skill, learning and experience which good physicians and surgeons of ordinary ability and skill, practicing in similar localities, ordinarily possess."

At page 538 (39 Pac. 579) the court quotes with approval from *West v. Martin,* 31 Mo. 375, 80 Am. Dec. 107:

" 'Whether errors of judgment will or will not, make a surgeon liable in a given case depends not merely upon the fact that he may be ordinarily skillful as such, but whether he has treated the case skillfully or has exercised in its treatment such reasonable skill and diligence as is ordinarily exercised in his profession.' "

There was expert testimony that defendant had not 'exercised the care and attention necessary, proper and usual under such circumstances. It is true that there was also expert testimony that he had done all that might reasonably be required. This, also, became a question of fact for the

jury, and its determination of it, there being ample evidence to support its conclusion, is binding upon us.

Speaking to the question of the obligation of a physician to his patient this court in *Bonnett v. Foote*, 47 Colo. 282, at page 285, (28 L. R. A. [N. S.] 136) said:

"In the absence of a special contract, the law implies that a surgeon employed to treat an injury contracts with his patient, first, that he possesses that reasonable degree of learning and skill which is ordinarily possessed by others of the profession; second, that he will use reasonable skill and ordinary care and diligence in the exercise of his skill and the application of his knowledge to accomplish the purpose for which he is employed; and third, that he will use his best judgment in the application of his skill in deciding upon the nature of the injury and the best mode of treatment."

Answering the contention of defendant that plaintiff failed to establish that the negligence alleged was the proximate cause of death it is to be observed that this also is a question, under proper instructions, for the jury. It is stated in 13 Cyc. 27, that:

"Within the rule which limits a recovery for injury to those damages which are its natural and proximate effects, the natural effects are those which might reasonably be foreseen, those which occur in the ordinary state of things, and proximate effects are those between which and the injury there intervenes no culpable and efficient agency. The matter is usually one of evidence which should be left for the decision of the jury."

It must also be remembered that the case at bar is not founded upon active malpractice, but upon the negligent failure to give proper care and attention to diagnosis and treatment of the patient. In 30 Cyc. 1578, this distinction is noted as follows:

"There is a fundamental difference in malpractice cases between mere errors of judgment and negligence in previously collecting data essential to a proper conclusion, or in subsequent conduct in the selection and use of instrumentalities with which the physician may execute his judg-

ment. If he omits to inform himself as to the facts and circumstances, and injury results therefrom, then he is liable."

It is clear that plaintiff predicates his action upon the theory that defendant failed to inform himself and give proper attention to the case. There is no claim that defendant did not possess skill, knowledge and experience in his profession, or that he made an error in diagnosing the ailment. If this were true the authorities cited by defendant would be decisive. It is in no sense an error of judgment, but an absolute failure to attend upon the patient and secure data upon which to base any judgment, that constitutes the ground of the complaint. There is abundant testimony that defendant made no effort to inform himself of the condition of his patient, or the progress of the malady, and if damage resulted therefrom he is liable.

In considering the amount of testimony to show that the death of the child was the proximate result of the alleged negligence, there must be taken into consideration the difficulty, if not the actual impossibility, of conclusively demonstrating the cause of death. The code of ethics among physicians is frequently a bar to securing positive testimony on questions such as are here involved. As was said in *Johnson v. Winston et al.,* 68 Neb. 430, 94 N. W., at page 609:

"We cannot overlook the well-known fact that in actions of this kind it is always difficult to obtain professional testimony at all. It will not do to lay down the rule that only professional witnesses can be heard on questions of this character, and then, in spite of the fact that they are often unwilling, apply the rules of evidence with such stringency that their testimony cannot be obtained against one of their own members."

There was expert testimony to the effect that the manner of examination, and the treatment of the child, was not that usually practiced; and, also, in answer to an hypothetical question, that the child died of uremic poisoning. There was similar testimony that affections of the kidneys may be, and frequently are, a result attendant upon scarlet fever. From the testimony of a lay witness the child

strangled to death from an accumulation of phlegm in its throat, and there was expert testimony that this condition also is to be guarded against in the progress of the disease. A non-professional witness also testified that the doctor said, as he was attempting to remove the obstruction from the throat of the child, "It's too late; I ought to have come when you called me."

In the syllabus in *Hayes v. Williams,* 17 Colo. 465, 30 Pac. 352, the proximate cause of an injury is held to be a question of fact:

"What is the proximate cause of an injury whether it be the original negligence of one party or the intermediate negligence of another party, is ordinarily a question of fact for the jury to be determined from the minor associated facts and circumstances."

The jury determined in this case that the proximate cause of the death of the child was the negligence of the defendant. There being testimony tending to support that conclusion this court should not interfere with the finding of the jury.

Error is assigned and vigorously urged to the giving of an instruction detailing matters to be considered in determining the amount of damages sustained. It is admitted that the instruction given states the abstract principle of law correctly, but it is said that it is not applicable because of lack of evidence to show any pecuniary damage or loss whatsoever to the plaintiff in the death of his son.

In brief, the instruction directs the jury to consider, in determining the loss, the age, health, condition in life, probable duration of life, mental and physical condition of the child, and his probable disposition and ability to assist plaintiff until his majority. Also a consideration of the probable expense of rearing and educating the boy. The jury were directed to determine these facts in the light of the evidence, in giving effect to which they were at liberty to apply their personal observation, knowledge and experience in like circumstances.

It appears that plaintiff proved the age of the boy, that his health previously had been good, and a photograph

showing his physical appearance was exhibited to the jury. No tables of mortality were introduced upon which to estimate the expectation of life. It is to be doubted, however, whether such tables would have been of aid in estimating the loss to the plaintiff, for, as said in 8 R. C. L. 643: "They show only the probable duration of life of healthy persons who are insurable risks, and not the duration of ability to work and earn money." In 13 Cyc. 216, it is said:

"While affirmative proof of the probable duration of life is admissible, such evidence is not absolutely essential, but the jury may arrive at a conclusion from evidence as to the health of plaintiff and the other facts of the case properly before them."

It is manifest that there can be no actual sum named as the equivalent for the services which the child might have rendered his parent, had death not occurred. The amount depends upon such a variety of circumstances and conditions that it can only be approximated after considering the age, health and condition in life of the child, and the probable amount that would have been expended upon him for maintenance and education during his minority. For the reason that items such as these are impossible of direct, positive proof by witnesses, they cannot be definitely fixed. They are analogous to damages for the loss of the companionship and services of a wife by a husband, which, in *Denver Consolidated Tramway Co. v. Riley,* 14 Colo. App. 133, 59 Pac. 476, that court declared were to be determined by the jury from their own observation, experience and knowledge, conscientiously applied to the facts and circumstances of the case. There is evidence to support the verdict, and therefore, the giving of the instruction, which is admitted correctly states the law, was proper, and is not subject to legal objection. It follows, therefore, that no error was committed in the giving of this instruction.

An instruction allowing the jury to consider the funeral expenses, approximately $45.00, in arriving at their verdict, is also assigned as error. Whether funeral expenses may properly be considered in actions for death by wrongful act has never been determined in this state. Upon the

great weight of authority, however, under statutes like ours, permitting recovery of damages in such cases, funeral expenses are a proper element of damage, especially where, as in this case, the plaintiff, the father, was bound in law to assume and pay them:

*Hollyday v. Steamer David Reeves,* 5 Hughes 89, Fed. Cas. No. 6625; *Little Rock, etc., R. Co. v. Barker,* 33 Ark. 350, 34 Am. Rep. 44; *Augusta Factory v. Davis,* 87 Ga. 648, 13 S. E. 577; *Southern Ry. Co. v. Covenia,* 100 Ga. 46, 29 S. E. 219, 40 L. R. A. 253, 62 Am. St. Rep. 312; *Ohio, etc., R. Co. v. Tindall,* 13 Ind. 366, 74 Am. Dec. 259; *Pennsylvania Co. v. Lilly,* 73 Ind. 252; *Mayhew v. Burns,* 103 Ind. 328, 2 N. E. 793; *Louisville, etc., Ry. Co. v. Wright,* 134 Ind. 509, 34 N. E. 314; *Southern Indiana Ry. Co. v. Moore* (Ind. App. 1904) 71 N. E. 516; *Le Blanc v. Sweet,* 107 La. 355, 31 South, 766, 90 Am. St. Rep. 303; *Owen v. Brockschmidt,* 54 Mo. 285; *Rains v. St. Louis, etc., Ry. Co.,* 71 Mo. 164, 36 Am. Rep. 459; *Pack v. New York,* 3 N. Y. 489; *Houghkirk v. Delaware, etc., Canal Co.,* 92 N. Y. 219, 44 Am. Rep. 370; *Roeder v. Ormsby* (Sup. Ct. Spec. T.) 22 How. Prac. (N. Y.) 270; *Pennsylvania R. Co. v. Zebe,* 33 Pa. 318; *Pennsylvania R. Co. v. Bantom,* 54 Pa. 495; *Pennsylvania R. Co. v. James,* 81 Pa. 194; *Missouri, etc., R. Co. v. Evans,* 16 Tex. Civ. App. 68, 41 S. W. 80; *Hedrick v. Ilwaco, etc., R. Co.* 4 Wash. 400, 30 Pac. 714; *Philby v. Northern Pac. Ry. Co.,* 46 Wash. 173, 89 N. W. 468, 9 L. R. A. (N. S.) 1193, 123 Am. St. Rep. 926, 13 Ann. Cas. 742.

Another instruction given, which stated that the fact that a physician is shown to have skill in his profession raised no presumption that he exercised such skill in a given case, would, if applicable, probably constitute error, for all persons are presumed to have properly performed the duties which imposed upon them by law. This instruction deprived defendant of such presumption. But it is to be noted that the action is founded solely upon the fact that the defendant failed and neglected to attend upon his patient, although urgently and repeatedly requested to do so. The case involves no question either of skill or the ex-

ercise of skill by defendant. The charge is one of deliberate neglect. The defendant gave no attention to the progress of the disease and failed to advise himself of the condition of his patient, or of the necessary treatment, according to testimony given, which the jury seems to have accepted as true. Upon all the facts disclosed by the evidence the instruction complained of had no application to the case and the giving of it does not support the claim of prejudicial error.

*Judgment affirmed.*

Decision *en banc.*

Mr. Justice Teller dissents. Mr. Justice Scott not participating.

Decided March 4, A. D. 1918.

Rehearing denied June 3, A. D. 1918.