539 P.2d 491 (1975)
Mary Ann HOWLETT, surviving spouse of Decedent Louis U. Howlett, Plaintiff,
v.
David GREENBERG, Defendant-Appellee,
Lynn Gonzales (Nee Howlett), Conservatrix of the Estate of Terry Lu Howlett, a mental incompetent, and Lynn Gonzales (Nee Howlett), Individually, Intervenors-Appellants.
No. 72-224A.
Colorado Court of Appeals, Div. III.
June 17, 1975.
Rehearing Denied July 22, 1975.
Certiorari Denied September 15, 1975.
*492 Robert W. Hansen, Denver, for defendant-appellee.
Charles A. Friedman, Hochstadt, Straw & Davis, P. C., Jordan Hochstadt, Denver, for intervenors-appellants.
Not Selected for Official Publication.
RULAND, Judge.
Intervenor Lynn Gonzales individually and as conservatrix of the estate of her sister, Terry Lu Howlett, a mental incompetent, appeals from a judgment entered upon a jury verdict for defendant Dr. David Greenberg in a wrongful death action. In a previous appeal this court granted intervenors, children of decedent, the right to pursue an appeal after plaintiff, Mary Ann Howlett, elected not to do so. Howlett v. Greenberg, 34 Colo.App. 356, 530 P. 2d 1285 (cert. granted on other grounds). We reverse and remand the cause for a new trial.
This action was initiated by plaintiff as surviving spouse against Dr. Greenberg, an orthopedic surgeon, and others not involved in this appeal, alleging that Greenberg's negligent medical practices caused the death of the decedent. The following facts essentially are not disputed.
As a result of injuries sustained in an automobile accident, on the morning of May 8, 1970, decedent was taken to the emergency room of Beth Israel Hospital. Upon his arrival a physical examination, which included examination of the abdomen, chest, extremities, and palpation of the spine, was performed by a staff physician and Greenberg. A history was obtained which disclosed that decedent had been injured in an automobile accident, was suffering pain in the knee and wrist, and had an allergy to penicillin. X-rays were taken, and Greenberg determined that decedent had suffered fractures of the right leg and wrist. He applied a cast to decedent's leg and inserted a traction pin in the wrist fracture. In addition to medication for pain, the staff doctor prescribed vistaril every four to six hours as needed for nausea. Decedent was then admitted to the hospital, and routine laboratory work was performed.
Greenberg testified that he visited decedent several times on May 8 and on the morning of May 9. Early on May 9, he determined that a non-emergency surgical procedure on decedent's wrist would be required, and he scheduled surgery for 11 a. m.
The rules and regulations of Beth Israel Hospital require, insofar as pertinent here, that a complete history and physical examination be performed within 24 hours after admission of a patient, and further, that no surgery other than emergency surgery may be performed unless the report of the history and physical is attached to the patient's chart.
Sometime during the evening of May 8, pursuant to hospital procedure, a staff physician performed a physical examination *493 and obtained a medical history from decedent. Such histories and physicals were routinely dictated by the physicians and transcribed by the Medical Records Department and incorporated into a patient's medical record. In the case of decedent, the history and physical report was not attached to decedent's chart at the time he was operated on on the morning of May 9. Further, the pre-operative checklist on the front of the chart indicated that no history and physical report was attached.
In the report, the examining physician noted that the decedent was nauseated, possibly due to medication. Greenberg did not know the contents of the report, and he made a notation on the chart to the effect that no history and physical had apparently been done.
At the time of the planned surgical procedure, decedent received a "rapid induction" of sodium pentothal (for sleep) and was given anectine (a muscle relaxant) by a certified registered nurse anesthetist in the presence of Greenberg. During the course of the induction, decedent regurgitated approximately 4,000 cubic centimeters of a dark fluid and aspirated some of this material into his lungs. Consequently, a tracheostomy (opening in the windpipe) was performed by a thoracic (chest) surgeon. Procedures were also followed by Greenberg to repair the wrist fracture.
Decedent developed pneumonia precipitated by the tracheal aspiration. The immediate cause of death, on May 19, 1970, was pneumonia.
Intervenors allege error in the trial court's ruling as to the force and effect of the pre-trial order, instructions given the jury, and admissibility of answers to a hypothetical question posed by counsel for Greenberg.

I. Pre-trial Order
Intervenors contend that trial court erred in not directing a verdict for plaintiff based upon "stipulations" adopted by the pre-trial order.
In her pre-trial statement, plaintiff listed numerous allegations of fact as "proposed stipulations" which tended to establish that Greenberg was negligent in his treatment of decedent. Conversely, Greenberg's pre-trial statement reflected that the issue of his negligence was disputed. We have no record of the proceedings at the pre-trial conference. Subsequent thereto counsel for one of the parties filed a document agreeing to some of the proposed stipulations in plaintiff's pre-trial statement and objecting to others. No similar document was filed by Greenberg.
The pre-trial order was apparently prepared by counsel for plaintiff, pursuant to instructions of the trial court. The court subsequently acknowledged that it did not review the order before signing it. The pre-trial order recites that Greenberg, inter alia, "agree[s] and stipulate[s] to the Proposed Stipulations set forth in plaintiff's Pre-Trial Memorandum previously filed with this Court in that no objections were filed within the time prescribed by Order of the Court at the pre-trial conference."
Prior to trial, plaintiff filed a motion requesting that Greenberg be enjoined from presenting evidence in opposition to the "stipulations." Following arguments of counsel, the court determined that Greenberg was not bound by the "stipulations" because there was no showing that his attorney had ever executed a document reflecting that he agreed to the "stipulations."
Intervenors contend that it was error for the trial court to modify the pre-trial order in this fashion absent a finding of "manifest injustice" pursuant to C.R.C.P. 16(c). Relative to this contention, both parties rely on alleged facts and documents as to the sequence of events at and following the pre-trial conference which are not part of the record on appeal. Absent a record to the contrary, we must assume that the trial court did not intend that counsel be bound by the "stipulations" without formal written consent thereto, and that the contrary provision in the pre-trial order did not *494 properly reflect the trial court's intent in this regard. See Laessig v. May D & F, 157 Colo. 260, 402 P.2d 183; see also Miller v. East Denver Municipal Irrigation District, 83 Colo. 406, 266 P. 211.

II. Jury Instructions Relative To Vicarious Liability
Relative to Greenberg's liability, the jury was instructed on a physician's standard of care and the implied warranty of skill. See Colorado Jury Instructions 15:1 and 15:2. Intervenors contend that the trial court erred in refusing to give additional instructions on vicarious liability.
Relying upon Beadles v. Metayka, 135 Colo. 366, 311 P.2d 711, plaintiff requested instructions relative to a surgeon's control over the activities of others during preparation for and performance of a surgical procedure in support of her theory that either the anesthetist or other nurses on the hospital staff may have been negligent. Our review of the record discloses no evidence from which the jury could have been led to infer that any of these persons allegedly under Greenberg's control were negligent.
The anesthetist testified that, although the physician has the right to select an anesthetic agent and must approve it, in decedent's case the anethetist made the selection. However, she had administered the same anesthetic agent to decedent on previous occasions, had experience some difficulties therewith, and consequently determined on a rapid (rather than gradual) administration of anectine this time and on the need for an intratracheal tube. Sometime during the morning of May 9, the anesthetist discussed her plans with Greenberg, who was told of decedent's problems with anesthesia on prior occasions. The evidence shows that the anesthetist's selection of sodium pentothal and anectine was with Greenberg's approval. Conversely, there is no evidence that her method of administering these drugs was negligent. Finally, there is no evidence that she was aware of or was required to determine, by hospital regulations or any professional standards that might govern her position, decedent's physical condition just prior to the surgery so as to reevaluate the type of anesthetic to be administered.
Intervenors also contend, in support of the vicarious liability instructions, that the jury could have believed that the hospital staff was negligent in not having the history and physical report on the chart or that the nurses were negligent in not checking the preoperative checklist. The only evidence offered in support of this contention is Greenberg's statement that it was the responsibility of the operating room supervisor to check the preoperative checklist and to call matters of significance therein to his attention. In light of Greenberg's undisputed testimony that he did not know the contents of the history and physical report and that he knew the report was not attached to decedent's file, we conclude that no negligence of the operating room supervisor was shown.
Since there was no evidence or inferences from the evidence to support the vicarious liability instructions tendered by plaintiff, the trial court properly declined to give these instructions. Dolan v. Mitchell, 179 Colo. 359, 502 P.2d 72.

III. Jury Instructions Relative To The Duty To Keep Informed Of A Patient's Condition
Intervenors contend that the trial court erred in refusing tendered instructions relative to plaintiff's theory that Greenberg had a duty to keep himself informed of the condition and progress of decedent from admission to the hospital up to the time that surgery was to be performed. We agree.
Greenberg does not dispute intervenors' contention that these instructions have a foundation in Colorado law and that this was a standard of practice for doctors in his community. See Tadlock v. Lloyd, 65 Colo. 40, 173 P. 200. However, he contends that there was no evidence or inferences *495 to be drawn from the evidence to support the instructions. We disagree.
From the evidence presented, the jury properly could infer that: The brown fluid in decedent's abdomen caused nausea; with knowledge that the nausea existed, examination of decedent's abdomen prior to the surgery by methods customarily used in such examinations would have disclosed an abnormal condition; and, with knowledge of that condition, additional procedures could have been followed during the surgery, or the surgery could have been postponed, with the result that the fatal pneumonia would have been avoided. While Greenberg seemed to dispute that the decedent was nauseated and specifically denied that decedent advised him of any nausea on the morning of May 9, there was evidence from which the jury could properly infer that the decedent was nauseated and that Greenberg should have known this by reviewing the contents of the history and physical report together with records reflecting the administration of vistaril for nausea over a 20-hour period. It is undisputed that on the morning of May 9, Greenberg's abdominal examination of decedent was limited to "casual observation."
While the instructions given by the trial court reflect that a physician generally is responsible for exercising reasonable skill and due care in treating his patient, where, as here, there is evidence to support a finding by the jury that a specific rule of law governing the physician's duty of care has been violated, we conclude that the plaintiff is entitled to a specific instruction on that rule. We also conclude that under the circumstances of this case, it is the better practice to include the specific instruction as part of the general instruction on the physician's duty of care so as not to overemphasize that aspect of the case and not as a separate instruction as tendered by plaintiff. See Manion v. Tweedy, 257 Minn. 59, 100 N.W.2d 124. Since we hold that plaintiff was entitled to an instruction on the physician's duty to keep informed as to the condition of decedent, the cause must be remanded for a new trial. See Renell v. Argonaut Liquor Co., 148 Colo. 154, 365 P.2d 239.

IV. Expert Testimony
Since this case must be retried, we discuss intervenors' objections to expert testimony elicited by Greenberg. Intervenors contend that the trial court committed reversible error in not sustaining plaintiff's objections to a hypothetical question posed to Greenberg's medical experts because the question failed to include undisputed facts which were essential to a fair opinion from the experts. In support of this contention intervenors list six allegedly material, undisputed facts which they assert were omitted from the hypothetical question.
The question, covering over three pages in the transcript and including two pages from an exhibit, purported to summarize the evidence elicited at the trial as a foundation for the experts' opinions as to whether Greenberg's conduct conformed with the standards of practice of an orthopedic surgeon performing surgical orthopedics in the Denver community in 1970. While we agree with intervenors that some of the facts referred to should have been included in the question and that, therefore, the question was objectionable, the objection made was insufficient to raise this issue on appeal as reversible error.
In substance, the objection made during the trial was that the question did not contain facts which had been established by the evidence and also that it included facts not in evidence. In none of his objections did counsel state the facts in evidence which should have been included in the question.
Only objections to a hypothetical question that are "definite and specific" will be reviewed on appeal. State Insurance Co. v. Du Bois, 7 Colo.App. 214, 44 P. 756. If an objection is made without a sufficient reason therefor being assigned to it, it cannot be considered by the reviewing *496 court. King Solomon Tunnel & Development Co. v. Mary Verna Mining Co., 22 Colo.App. 528, 127 P. 129. The purposes of the rule requiring objecting counsel to be reasonably specific are to enable the trial court to rule intelligently on the objection and to afford interrogating counsel an opportunity to amend and overcome the defect in his question if possible. Adelmann v. Elk River Lumber Co., 242 Minn. 388, 65 N.W.2d 661. See Ward v. Wilms, 16 Colo. 86, 27 P. 247, and Curr v. Hundley, 3 Colo.App. 54, 31 P. 939. Hence, it was incumbent upon counsel in this case to specify those facts which he felt should have been included in the hypothetical question. See Pastour v. Kolb Hardware, Inc., 173 N.W.2d 116 (Iowa); Royal Indemnity Co. v. Smith, 456 S.W.2d 218 (Tex.Civ.App.); Willey v. Travelers Indemnity Co., W. Va., 193 S.E.2d 555.
We have considered intervenors' other allegations of error and find them to be without merit.
The judgment is reversed and the cause remanded for a new trial.
VanCISE and STERNBERG, JJ., concur.