CROSSWHITE et al., Appellants,

v.

DESAI, Appellee.

[Cite as *Crosswhite v. Desai* (1989), 64 Ohio App.3d 170.]

Court of Appeals of Ohio,
Greene County.

No. 88 CA 99.

Decided Aug. 24, 1989.

*William F. Schenck*, for appellants.

*Patrick K. Adkinson*, for appellee.

GRADY, Judge.

In this action alleging medical malpractice the trial court granted summary judgment in favor of the defendant physician. The court found that the plaintiff's medical expert was not competent to give an opinion concerning liability. The court also found that the plaintiff's case failed to show that the defendant deviated from the applicable standard of care. We find that the trial court erred in granting summary judgment and we will remand for trial.

## I

### Posture of the Case

We are concerned with an action for medical malpractice brought by appellant Herbert D. Crosswhite against appellee P.K. Desai, a physician. The claim alleges negligence on the part of Dr. Desai in providing medical services to Crosswhite for a urological problem while he was a patient at Greene Memorial Hospital in Xenia, Ohio.

Crosswhite alleges that Dr. Desai, after unsuccessfully treating him for a kidney stone, discharged him prematurely from the hospital. Thereafter, Crosswhite, after experiencing further pain and difficulty, consulted and was successfully treated by another urologist, Dr. G. Robert Horton, who removed the kidney stone. Dr. Desai has denied negligence.

In due course a motion for summary judgment was filed by Dr. Desai. It was supported by his affidavit. In that document Dr. Desai stated that he is a licensed physician devoting at least three fourths of his professional time to active clinical practice of medicine or its instruction at any accredited university. He went on to state his opinion that his treatment of Crosswhite conformed to required standards of care and that any injury suffered by Crosswhite was not caused by a deviation from those standards. Dr. Desai did not discuss his treatment of Crosswhite otherwise. No other affidavits were submitted in support of the motion.

Crosswhite moved to deny the motion, and offered in support the affidavit and deposition of Dr. Horton. The deposition discussed in detail his treatment of Crosswhite. In his affidavit Dr. Horton gave the opinion that, in releasing Crosswhite from the hospital, Dr. Desai's care and treatment fell below the standard of care that a physician of ordinary skill, care and diligence would have provided in similar circumstances. He also stated that Dr. Desai's

failures were the cause of Crosswhite's pain and suffering and occasioned his further hospitalization.

At the time he gave his deposition, Dr. Horton had been retired from the practice of medicine for eighteen months and was residing in North Carolina, though he remained licensed to practice in Ohio. Prior to his retirement, he had practiced medicine in Clark County, Ohio, for thirty-three years, having been first licensed in Ohio in 1952. His specialty was in urology. After his retirement and move to North Carolina, he no longer practiced or consulted.

In his affidavit, dated November 8, 1988, Dr. Horton stated:

"1. I have personal knowledge of the facts contained in this affidavit.

"2. I am licensed to practice medicine in the State of Ohio, and have been so licensed at all times relevant to the matter of *Crosswhite v. Desai.*

"3. Although I do not actively practice medicine at this time, I was in active practice at the time of the events giving rise to the complaint of *Crosswhite v. Desai*, and my practice was as a specialist in urology, and I did devote at least three-fourths of my professional time to active clinical practice of medicine.

"* * * *

"5. I do not testify on behalf of parties to medical malpractice lawsuits unless I have been involved directly as a physician who has examined or treated a patient making a claim. In other words, my services as a witness are not offered, for hire, as an expert."

The motion for summary judgment filed by Dr. Desai argued that he was entitled to judgment as Crosswhite had failed to produce expert medical testimony sufficient to support a claim of medical negligence as required by law. Dr. Desai argued that his denial of negligence was not contradicted by the statements of Dr. Horton. He also argued that Dr. Horton was incompetent to give an opinion concerning the negligence denied by Dr. Desai by reason of R.C. 2743.43(A).[1] Dr. Desai further argued that Dr. Horton's retirement from practice excluded him under the statute, leaving Crosswhite

---

1. "(A) No person shall be deemed competent to give expert testimony on the liability issues in a medical claim, as defined in division (D)(3) of section 2305.11 of the Revised Code, unless:

"(1) Such person is licensed to practice medicine and surgery, osteopathic medicine and surgery, or podiatric medicine and surgery by the state medical board or by the licensing authority of any state;

"(2) Such person devotes three-fourths of his professional time to the active clinical practice of medicine or surgery, osteopathic medicine and surgery, or podiatric medicine and surgery, or to its instruction in an accredited university."

without the evidentiary support required by Civ.R. 56 to withstand Dr. Desai's motion.

By judgment entry filed November 14, 1988, the trial court granted the motion for summary judgment. The two grounds stated in the court's order are (1) that Dr. Horton was incompetent to testify pursuant to R.C. 2743.43, and (2) that Dr. Horton's statements failed to support a deviation from accepted standards of care by Dr. Desai in his treatment of Crosswhite.

Crosswhite filed a timely notice of appeal. In his brief, Crosswhite argues that the trial court erred in granting the motion for summary judgment on the two grounds stated.

## II

### Competence of Appellants' Medical Expert

In most forms of litigation the use of expert opinion testimony is permissive. Evid.R. 702. The qualification or competency of a witness to testify as an expert on a particular subject is a matter that rests with the trial court. Decisions of the trial courts on such matters will ordinarily not be reversed unless there is a clear showing that the court abused its discretion. *Ohio Turnpike Comm. v. Ellis* (1955), 164 Ohio St. 377, 58 O.O. 179, 131 N.E.2d 397.

It has long been the rule in most jurisdictions that in cases of medical malpractice expert testimony is not merely permitted but required of the plaintiff to meet his burden of proof. Commenting on the rule, Wigmore classifies medical malpractice as an issue of *special experience* concerning which testimony may be received only of a person of that special experience. 7 Wigmore, Evidence (Chadbourn Rev.1978), Section 2090. Absent that requirement, a plaintiff would prefer " * * * to rest his case on the mere facts of his sufferings, and to rely upon the jury's untutored sympathies, without attempting specifically to evidence the defendant's unskillfulness as the cause of those sufferings." *Id.* Ohio has long followed suit, holding " * * * that expert testimony is ordinarily needed to establish the requisite standard of care and skill a physician owes in his treatment of a patient." *Hoffman v. Davidson* (1987), 31 Ohio St.3d 60, 62, 31 OBR 165, 167, 508 N.E.2d 958, 960–961, citing *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 75 O.O.2d 184, 346 N.E.2d 673.

The discretion of the trial court to determine the competency of an expert medical witness in a medical malpractice case has been narrowed by

the legislature in enacting R.C. 2743.43 and by the Supreme Court in adopting Evid.R. 601(D). The two provisions are identical in effect.[2] The rule provides:

"Every person is competent to be a witness except:

" * * *

"(D) A person giving expert testimony on the issue of liability in any claim asserted in any civil action against a physician, podiatrist, or hospital arising out of the diagnosis, care or treatment of any person, unless the person testifying is licensed to practice medicine and surgery, osteopathic medicine and surgery, or podiatric medicine and surgery by the state medical board or by the licensing authority of any state, and unless such person devotes three-fourths of his professional time to the active clinical practice in his field of licensure, or to its instruction in an accredited university."

The rule thus makes two requirements of any person who gives expert testimony on the issue of liability [3]: (1) a license to practice medicine and (2) active clinical practice in his field of licensure that absorbs three fourths of his professional time. In lieu of the practice, the rule would allow instruction in an accredited university.

The rule governs competency but does not seek to define it. The trial court is charged with finding whether a prospective expert witness meets both requirements of the statute. Licensure is an objective fact not subject to interpretation.[4] The second requirement is not an objective fact but a subjective determination that will vary with the particular experience of the expert. It is subject to determination by the courts.

The General Assembly has not defined "clinical practice" as used in the rule or statute. In *Levin v. Hardwig* (1979), 60 Ohio St.2d 81, 14 O.O.3d 304, 397 N.E.2d 762, the Supreme Court quoted a definition of "clinical practice" found in N.Y.Consol.Laws, Education Law, Section 385–b(a):

" ' * * * the act of providing any form of medical and health care, including patient consultations, and the act of performing clinical investigation involving

---

**2.** R.C. 2743.43 incorporates the definition of "medical claim" in R.C. 2305.11(D)(3): " 'Medical Claim' means any claim that is asserted in any civil action against a physician, podiatrist, or hospital * * * that arises out of the medical diagnosis, care, or treatment of any person. * * * "

**3.** In *McCrory v. State* (Mar. 27, 1980), Franklin App. No. 79AP–621, unreported, affirmed (1981), 67 Ohio St.2d 99, 21 O.O.3d 63, 423 N.E.2d 156, Judge McCormac, concurring separately, found that the restrictions of R.C. 2743.43 apply only to expert testimony regarding liability, and that testimony may be heard concerning proximate cause and damages from a person who fails to meet the competency requirements of the statute.

**4.** For Ohio's complex licensure standards and procedures see R.C. Chapter 4731.

patients, for which acts a fee for professional services is customarily charged.' " *Id.* at 83, 14 O.O.3d at 306, 397 N.E.2d at 763, fn. 2.

The court did not, however, specifically adopt the definition or any other, leaving the determination to the trial courts in each case.

In the more recent case of *McCrory v. State* (1981), 67 Ohio St.2d 99, 21 O.O.3d 63, 423 N.E.2d 156, the Supreme Court addressed the term "active clinical practice" in its syllabus of the case:

"The phrase 'active clinical practice,' contained in R.C. 2743.43(A), primarily describes those physicians who spend three-fourths of their professional time treating patients, but it also includes the physician-specialist whose work is so related or adjunctive to patient care as to be necessarily included in that definition for the purpose of determining fault or liability in a medical claim."

In that case the court found that a physician who spent eighty-five percent of his professional time as a director of clinical research in a drug company that manufactured the drug which allegedly caused the medical injury was competent to testify under R.C. 2743.43. The court went on to state:

"Nowhere in the statute is the phrase 'active clinical practice' defined. Dictionary definitions of phrases such as 'clinical' and 'clinical medicine' point to patient care as a basic requirement and further suggest bedside care. Hence, we conclude the statute deals with the basic unfairness of permitting the pointing of accusatory fingers by those who do not take care of the sick toward those who do. *More specifically, we conclude that the purpose of the statute is to preclude testimony by the physician who earns his living or spends much of his time testifying against his fellows as a professional witness, and to prevent those whose lack of experiential background in the very field they seek to judge, the clinical practitioner, makes the validity of their opinions suspect, from expressing those opinions for pay or otherwise.*" (Emphasis added.) *Id.* at 103, 21 O.O.3d at 65, 423 N.E.2d at 159.

A similar but expanded view was expressed by the Court of Appeals for Franklin County in *Wise v. Doctors Hosp.* (1982), 7 Ohio App.3d 331, 334, 7 OBR 427, 431, 455 N.E.2d 1032, 1036:

" * * * The purpose of the restriction on expert testimony is to discourage, as far as possible, testimony regarding the proper standard of care by a 'professional witness' or a physician who is sequestered in his laboratory and has no first-hand knowledge of the daily care of patients. The physician who spends his entire professional time some place other than treating patients, or who is in great demand as a witness because he is recognized as a 'expert,' may indeed be the best witness to testify as to whether a particular action by the physician was the likely cause of the harmful condition. Daily patient

contact is not necessary to the accumulation of such knowledge. However, such a witness often has no knowledge about the norms of patient care and the standards of physician conduct appurtenant thereto. * * * "

In *Wise* the court permitted the testimony of an expert pathologist whose testimony went not to liability but causation, and so was not barred by Evid.R. 601(D). Nevertheless, the court found " * * * that the term 'professional time' used in Evid.R. 601(D) means the time spent by a licensed professional in the pursuit of his or her profession." *Id.* at 334, 7 OBR at 432, 455 N.E.2d at 1037. The court prefaced the holding with this observation: "[T]he rule merely establishes the competence of the witness and the parties are free to attack the credibility of the witness who spends little time in the clinical practice." *Id.*

The purpose of Evid.R. 601(D) is not to make proof of a medical claim more difficult. The nature of the claim itself and the requirement of testimony by one professional against another naturally increase that burden. As the Supreme Court of Nebraska observed in *Johnson v. Winston* (1903), 68 Neb. 425, 430, 94 N.W. 607, 609:

"We cannot overlook the well-known fact that in actions of this kind it is always difficult to obtain professional testimony at all. It will not do to lay down the rule that only professional witnesses can be heard on questions of this character, and then, in spite of the fact that they are often unwilling, apply the rules of evidence with such stringency that their testimony cannot be obtained against one of their own members."

See, also, *Carbone v. Warburton* (1952) 22 N.J.Super. 5, 91 A.2d 518; *Tadlock v. Lloyd* (1918), 65 Colo. 40, 173 P. 200; and the dissenting opinion of Judge Brogan of this court in *Hinders v. Miller* (Dec. 20, 1984), Montgomery App. No. 8772, unreported, at 7, 1984 WL 3269:

" * * * R.C. 2743.43 must receive liberal interpretation from trial judges as it is well known that a conspiracy of silence pervades the medical community when a physician or a hospital is accused of medical malpractice or negligence. Often, the victim of malpractice or his survivors must search outside the local community for expert medical testimony to support a malpractice claim."

Where a right exits the law would be deficient if there were no remedy for violation of that right. The protections accorded clinical practitioners by the competency requirements of Evid.R. 601(D) are reasonable and do not defeat that right. However, those limitations should not be applied so narrowly that the right of redress in a medical claim collapses under an undue burden.

The licensure requirement of Evid.R. 601(D) relies on the traditional presumption that one licensed to practice in a branch of the healing arts is

qualified to testify as an expert in his given field. 2 Jones, Evidence (6 Ed. Gard Rev.1972) 619, Section 14:13. The further requirement of clinical practice experience reflects the concern that no person be allowed to give an opinion on duty of care or its breach in a medical claim, the liability issue, unless he is fit by experience to do so. The crux of that issue is that *special experience* of concern to Wigmore and the rule would ensure that one who would give an opinion concerning a failure of care have a proven basis in experience, objectively determined, to do so. Once established, the quality of that experiential base and the credibility of the witness is subject to attack through cross-examination.

"Where there is any reasonable evidence of qualification in addition to the license, he should be permitted to testify. Cross-examination will expose any weakness in or limitations on his knowledge and experience. And then the weight to be accorded his testimony may be left where it has rested traditionally, namely, with the jury." *Carbone v. Warburton, supra,* 22 N.J.Super. at 15, 91 A.2d at 522.

Retirement from medical practice, standing alone, has not been considered an impediment to competence. In *Carbone,* an eighty-two-year-old retired surgeon who had observed but not performed surgery during the twenty years prior to his testimony was permitted to give an opinion as to liability in a surgical malpractice case. In *Hinders v. Miller, supra,* this court noted that retirement alone was not an impediment when the physician was licensed and engaged in another qualifying activity. Wigmore notes with approval that "The retirement from active practice involves no disqualification." 3 Wigmore, *supra,* at 3, fn. 1, Section 687.

Evid.R. 601(D) and R.C. 2743.43 speak of a person who "devotes three-fourths of his professional time to the active clinical practice" in his field of licensure. In setting this quantitative and qualitative standard, the statute uses the present tense. However, the standard is more directly concerned with the past. The essential inquiry made in the test is retrospective: has that witness acquired that special experience (Wigmore) or experiential background (*McCrory, supra*) in the field he seeks to judge? A literal and strict interpretation of the statute focusing only on the present ignores the historical nature of the inquiry and the true purpose of the statute. It might even permit the testimony of a novice currently in practice yet exclude the testimony of an experienced clinical practitioner who is not. It would not serve the purposes of the statute or the ends of justice to exclude the assistance of the experienced specialist whose clinical practice spanned decades, because he is now retired. The true purpose of the statute is to ensure competency, and a strict application of the text in its literal sense fails to do that.

According to his affidavit and deposition, Dr. Horton had been engaged in the clinical practice of medicine for thirty-three years. He had practiced in the same geographic area as Dr. Desai. Dr. Horton actually observed and treated Crosswhite for his alleged problem. Dr. Horton has stated that he will not testify in a case in which he was not directly involved. Lastly, Dr. Horton remains licensed to practice medicine, though he is now retired from patient treatment.

Exclusion of Dr. Horton's testimony on the issue of liability will in no way advance the purposes and objectives of Evid.R. 601(D) and R.C. 2743.43 as identified in *McCrory* and *Wise*. It would operate as an undue burden on the claimant, who would then be left with no alternative but to seek assistance elsewhere from a physician who would be required to rely on the notes of an attending physician who had himself been deemed not competent. It would unreasonably deprive the trier of fact of the assistance of an experienced and competent physician who can speak directly to the issues to be decided by the trier.

The purpose of the rule and the statute is to ensure that an expert witness has that *special experience* necessary to competently advise the trier of fact concerning an alleged failure of care in a medical claim against a clinical practitioner. That experience is present if the witness is engaged or has been engaged in an active clinical practice, *i.e.*, one involving the care of patients or investigation of their illnesses or injuries, or is engaged or has been engaged in medical professional work so related or adjunctive to patient care as to be a part of it. Once it is established, the extent, nature and value of that experience, including current activities, are matters of credibility to be tested in cross-examination.

We find that the trial court abused its discretion in finding that Dr. Horton's testimony was excluded by R.C. 2743.43 and Evid.R. 601(D). The fact of Dr. Horton's retirement does. not render him incompetent under the terms of those provisions.

### III

#### Issues Presented by the Supporting Affidavits and Deposition

The basis for liability in a medical negligence, or malpractice, claim in Ohio is set out in *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 131, 75 O.O.2d 184, 186–87, 346 N.E.2d 673, 677:

"[I]n order to establish medical malpractice, it must be shown by a preponderance of the evidence that the injury complained of was caused by the doing of some particular thing or things that a physician or surgeon of ordinary

skill, care and diligence would not have done under like or similar conditions or circumstances, or by the failure or omission to do some particular thing or things that such a physician or surgeon would have done under like or similar conditions and circumstances, and that the injury complained of was the direct result of such doing or failing to do some one or more of such particular things."

Civ.R. 56(C) provides that, upon motion and reply:

" * * * Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor. * * * "

The burden of showing that no genuine issue exists as to any material fact falls upon the moving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. All evidence submitted in connection with a motion for summary judgment must be construed most strongly in favor of the party against whom the motion is made. *Morris v. First Natl. Bank* (1970), 21 Ohio St.2d 25, 50 O.O.2d 47, 254 N.E.2d 683. Before summary judgment may be granted the court must find that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and that favors the movant. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267.

The affidavit of appellee Dr. Desai was wholly conclusory and failed to address any issue of fact. Each of his statements was directly contradicted by the terms of the affidavit of Dr. Horton, which is supplemented by Dr. Horton's deposition explaining in detail his care and treatment of Crosswhite.

In his deposition Dr. Horton stated that he first saw Crosswhite on December 21, 1984. Crosswhite was then in intractable pain. Dr. Horton diagnosed left urethral colic and hospitalized Crosswhite immediately. After examination and X-rays revealed the presence of a kidney stone, Dr. Horton removed it surgically.

The claim against appellee Desai alleges that he discharged Crosswhite from the hospital without removing the kidney stone, exposing him to further pain and risk. Dr. Horton stated in his deposition that records of that

hospitalization show that the stone was evident and that Dr. Desai attempted unsuccessfully to remove it. Dr. Horton stated that a patient with a stone should not be discharged from the hospital in intractable pain, the condition in which Dr. Horton found Crosswhite the day after he was discharged by Desai. Dr. Horton stated that he would have performed surgery rather than send Crosswhite home. From all indications the stone was not likely to pass and should have been removed surgically.

Dr. Horton was asked twice by counsel for Crosswhite to state his knowledge and opinion concerning the applicable standard of care and whether Dr. Desai's treatment fell below that standard. Dr. Horton did not respond with an opinion but, instead, stated what he would have done. It is not unusual that a physician speaking from a clinical practice background fails to respond in the opinion format expected by the law. The responses given by Dr. Horton make it plain, however, that he would not have followed Dr. Desai's treatment in this case. In his later affidavit of November 8, 1988, Dr. Horton states his opinion that Dr. Desai's treatment fell below the applicable standard of care.

Appellee argues that Dr. Horton in his deposition failed to support Crosswhite's theory of negligence and, in fact, stated that release from hospitalization may be appropriate. We do not agree. Dr. Horton's deposition testimony can only be read to be in full support of the view that release of a patient in Crosswhite's condition was improper. To the extent that he failed to respond to opinion questions, a fair reading of Dr. Horton's testimony supports the view that he simply misapprehended what he was asked. The "opinion" format frequently confuses expert witnesses. Under no reading, and particularly that favoring appellant as required by Civ.R. 56, can it be said that Dr. Horton expressed the view that Dr. Desai's treatment met the standard of care owed by physicians to patients.

Appellee argues that Dr. Horton's affidavit should be excluded because it "clearly contradicts" his deposition. In support of its argument, appellee relies on the prior decision of this court in *Rogan v. Beerman Realty Co.* (Feb. 20, 1987), Montgomery App. No. 9706, unreported, 1987 WL 6831. In *Rogan,* a slip and fall case, the plaintiff claimed to have fallen because some ice cream had been spilled on a ramp. In her deposition Rogan conceded that she had no idea how long the ice cream was there, a factor relevant to actual or constructive notice and liability. In a later deposition she stated that she was of the opinion that the ice cream had been on the ground at least twenty-four hours. This court excluded the affidavit as it directly contradicted the prior deposition and because it stated an opinion without qualification of the witness as an expert. The court recognized it for what is was, a bald and self-serving attempt to avoid the consequences of a prior admission.

Appellee also relies on *Bullock v. Intermodal Transp. Services, Inc.* (Aug. 6, 1986), Hamilton App. No. C–850720, an unreported decision of the First Appellate District, 1986 WL 8519. In *Bullock*, a trucking company terminated a lease with one of its drivers for failure to perform under the written terms of their lease. The driver, Bullock, testified at deposition that he understood he had more time under an oral agreement. He conceded that the purported extension was not in the written lease and had not been reduced to writing. In a later affidavit he stated that he recalled once seeing a writing granting the extension. The court excluded the affidavit. The court of appeals affirmed, stating that an inconsistent or contradictory affidavit would be allowed only when it related new facts not known at the deposition or explained the basis for confusion in the prior statement.

■ Neither *Rogan* nor *Bullock* is applicable to the case before us. The answers given by Dr. Horton in his deposition were not directly responsive to questions eliciting his "opinion," but they in no way denied negligence or liability on the part of Dr. Desai. The later affidavit did not contradict or deny the earlier statements; it merely addressed the negligence issue directly. Later statements will not be excluded unless they deny or contradict, without adequate explanation, prior sworn statements. Dr. Horton's affidavit should not be excluded for that reason.

Allowing Dr. Horton's deposition and affidavit, and reading the affidavit of Dr. Desai, it is clear that there exists a genuine issue of material fact concerning negligence and liability. Dr. Horton states his opinion that Dr. Desai was negligent and that his negligence was the proximate cause of Crosswhite's claimed injuries. Dr. Desai denied negligence. We are concerned that appellee's position is supported only by the statement of the party defendant that is self-serving and conclusory. It is of limited persuasive value. When Dr. Horton's views are taken into consideration, and in view of the standards of Civ.R. 56 favoring the party against whom the motion is made, it is clear that a genuine issue of material fact exists and that the trial court erred in granting summary judgment.

IV

Conclusion

The judgment of the trial court is reversed and the matter is remanded for further proceedings.

*Judgment reversed
and cause remanded.*

BROGAN and FAIN, JJ., concur.