DECISION
{¶ 1} The plaintiff-appellant, the estate of Ann B. Fink, appeals from the order of the trial court granting summary judgment to the defendant-appellee, Marguerite M. Blythe, M.D., Inc., in an action alleging negligent medical malpractice, "intentional medical malpractice," and wrongful death. In its two assignments of error, the estate argues that the trial court erred by granting summary judgment to Dr. Blythe, and by failing to grant it a continuance to secure a supplemental affidavit from its expert witness to defend against Dr. Blythe's motion for summary judgment. For the following reasons, we affirm.
 {¶ 2} The gist of the allegations against Dr. Blythe was that she had prescribed excessive doses of medication without personally examining Fink while she was a patient at Jewish Hospital. The action was filed on December 2, 1999. The same action against Dr. Blythe, Jewish Hospital, and nurse Lori Hempel had been previously filed on April 10, 1998. The estate had voluntary dismissed its claims against Jewish Hospital on December 2, 1998, and against Nurse Hempel on January 25, 1999, when confronted by motions for summary judgment pointing out the lack of any expert opinion to support the estate's theories of recovery. The estate's refiling on December 2, 1999, reinstated claims against all three defendants.
 {¶ 3} On May 4, 2000, the trial court issued an order, journalized the next day, that noted that the case had been set for trial on May 14, 2001, over a year away. The parties were ordered to furnish trial briefs fourteen days before trial, to disclose all expert witnesses (for the plaintiff) by September 29, 2000 and (for the defendant) by November 30, 2000, to complete all discovery by March 30, 2001, and to submit all pretrial motions by April 11, 2001.
 {¶ 4} On October 4, 2000, Jewish Hospital filed a motion for summary judgment, advising the court that it had received from the estate only summaries of the anticipated opinions of its two potential experts, Vickie Turner, a nurse, and Dr. Stephen Deutsch, a psychiatrist. The hospital stated that thesesummaries did not include any opinion on proximate cause. Additionally, the hospital submitted the affidavit of Dr. Blythe in which she stated that she had not breached any standard of professional medical care and that, even if she had, no injury had occurred to Fink as a result. Also in her affidavit, Dr. Blythe addressed a letter, attached as an exhibit, from Dr. Deutsch to the executor of the Fink estate. In that letter, dated July 24, 1988, Dr. Deutsch stated that he had reviewed the medical records of Fink's hospitalization and that, in his opinion, "medication for agitation should have been initiated with doses significantly lower than the ones prescribed by Dr. Blythe." Dr. Deutsch also concluded that "the psychiatric care fell below an acceptable standard." In her affidavit, Dr. Blythe stated that she had reviewed Dr. Deutsch's letter, and "despite disagreeing with his conclusions as to my compliance with the standard of care, [I] note that Dr. Deutsch fails to offer any opinion as to whether or not my care directly or proximately caused Ann Fink further injuries and/or death."
 {¶ 5} On December 5, 2000, Dr. Blythe filed a separate motion for summary judgment. Similar to the hospital's motion, Dr. Blythe's motion was based upon the lack of any expert opinion on proximate cause. She attached the same affidavit by her that had been used by Jewish Hospital to support its motion for summary judgment.
 {¶ 6} Also on December 5, 2000, Dr. Blythe moved to have the estate's executor, Stephen Kurlansky, Esq., removed as counsel from the action. According to Dr. Blythe, it had become apparent through a review of the medical records that Kurlansky would be a necessary witness in the case.
 {¶ 7} On December 28, 2000, the estate moved for "additional time to respond to the Motions [for] Summary Judgment and other matters." In the motion, Kurlansky advised the court that "neither the letter nor the spirit of the Case Management Order was breached," and that he had fully advised opposing counsel of the identity of his experts and provided summaries of their testimony. He asked, however, for additional time, approximately three to four weeks, to produce their testimony in affidavit form, because both experts were out of town. He attached copies of the summaries of his experts' opinions that he had already exchanged with counsel and then further attached a copy of Dr. Deutsch's most recent report, dated September 11, 2000. In this letter, Dr. Deutsch stated that Fink's medical difficulties experienced on April 11, 1997, "were exacerbated by the diagnostic evaluation and treatment recommendations of Dr. Marguerite Blythe."
 {¶ 8} Kurlansky also based his request for additional time on two other factors. First, he stated that Dr. Blythe's motion to remove him from the case as counsel necessitated further discussions with the Fink family. Second, Kurlansky stated that he had had "multiple health problems from the early Spring 2000 which resulted in surgery with a difficult follow-up. At this point, counsel is operating only at 80-90% of his usual pace." He noted further that his secretary had had two hospitalizations within the previous seven months, and that her absence had further complicated his schedule.
 {¶ 9} On the same day that the estate requested additional time to oppose the "motions" for summary judgment, the trial court journalized an entry granting Jewish Hospital's motion as "unopposed."
 {¶ 10} No action was taken with respect to Blythe's motion for summary judgment until April 2, 2001, at which time the estate asked the trial court to either deny the motion or grant it a continuance. Citing Civ.R. 56(F), the estate submitted an affidavit from Kurlansky stating that the estate had yet to receive a third affidavit-report from Dr. Deutsch, but that "[a] check with U.P.S. on-line tracking service has indicated that the package was in the process of receipt in Cincinnati." The affidavit also stated that Dr. Deutsch's affidavit would address both standard-of-care and proximate-cause issues.
 {¶ 11} On April 13, 2001, the estate submitted the April 2, 2001, affidavit of Dr. Deutsch. In the affidavit, Dr. Deutsch stated that he had devoted 25% of his professional time to the active practice of medicine and surgery. The affidavit adopted by reference Dr. Deutsch's previous opinion letters of July 24, 1998, and September 11, 2000. He reiterated his previous conclusion regarding Dr. Blythe's failure to satisfy the appropriate standard of medical care. Further, he stated that Dr. Blythe's diagnostic evaluation and treatment had exacerbated Fink's confused state, agitation, and "very likely" the respiratory difficulties she had experienced on the morning of April 11, 1997, while diminishing her responsiveness. He concluded that as a result of "this insult to Mrs. Fink's body from the medications prescribed by Dr. Blythe on April 11, 1997, Mrs. Fink was hospitalized in the intensive care unit and other critical care units at the hospital."
 {¶ 12} Also on April 13, 2001, the estate submitted a "Memorandum in Support of Medical Expert Qualifications of Stephen I. Deutsch, Ph.D." In the memorandum, the estate noted that, at the time he had originally reviewed records and issued an opinion on Mrs. Fink's care on July 24, 1998, "Dr. Deutsch [had] devoted 50% of his professional time to active clinical medical practice as mandated" by Evid.R. 601(D). According to the estate, it was only after Dr. Deutsch was appointed a Mental Health Service Line Director for the VA Maryland Health Care System in August 1998 that the percentage had dropped from 50% to 25%. To corroborate this statement, the estate submitted the curriculum vitae of Dr. Deutsch.
 {¶ 13} On April 16, 2001, the trial court granted Dr. Blythe's motion for summary judgment, stating that upon review of the evidence, and construing the evidence most strongly in favor of the Fink estate, "reasonable minds could come to but one conclusion and that conclusion is adverse to [the Fink estate]."
 {¶ 14} On appeal, the estate raises two assignments of error. First, it argues that the trial court erred to the extent that it based its grant of summary judgment to Dr. Blythe on Evid.R. 601(D), which requires that a medical expert "devote at least one-half of his or her professional time to the active clinical practice in his or her field of licensure, or to its instruction in an accredited school." According to the estate, this rule was satisfied because, at the time he initially reviewed the medical records that formed his opinion in 1998, Dr. Deutsche did meet this requirement, at least according to the representations of Kurlansky as an officer of the court. Second, the estate argues in the alternative that the trial court erred by not granting it a continuance to secure another affidavit from Dr. Deutsch, presumably to establish his competency under Evid.R. 601(D).
 {¶ 15} We address the second assignment first. The estate actually requested two continuances. The first, dated December 28, 2000, was a request for additional time of three to four weeks to respond to the "motions" for summary judgment against it, an apparent reference to the summary-judgment motions of both the Jewish Hospital and Dr. Blythe. The trial court appears to have ignored the estate's motion for a continuance with respect to the hospital's motion for summary judgment, which it granted on the same day as "unopposed." The estate has not appealed the granting of this motion. As for Dr. Blythe's motion for summary judgment, the trial court took no action with respect to it until April 16, 2001, which would indicate that the court at least unofficially granted the extra three to four weeks that the estate had requested.
 {¶ 16} The only other continuance requested by the estate was on April 2, 2001, at which time the estate apparently was concerned that it would not receive Dr. Deutsch's most recent report by April 11, 2001, the cut-off date for pretrial motions. The report was actually submitted by the estate on April 13, 2001. Although the court appears to have never ruled formally on the continuance,[1] there is nothing in the record indicating that the trial court failed to consider Dr. Deutsch's most recent report when it ruled on the summary-judgment motion three days later on April 16, 2001.
 {¶ 17} Finally, it should be pointed out that, after submitting Dr. Deutsch's most recent report on April 13, 2001, in which he indicated that only 25% of his professional time was devoted to active clinical practice, the estate did not ask for any further continuances. Rather, the estate asked that the trial court find Dr. Deutsch to be competent under Evid.R. 601(D), based upon the representations of Kurlansky that, prior to 1999, Dr. Deutsch had devoted over 50% of his professional time to active clinical medical practice. Nowhere in this separate filing, captioned "Memorandum in Support of Medical Expert Qualifications," did Kurlansky ask that the court grant the estate a continuance so that a corrective affidavit from Dr. Deutsch could be filed. The only relief requested was that the court deem Dr. Deutsch competent to testify as a medical expert based upon the representations of counsel.
 {¶ 18} The estate's second assignment of error is overruled, and we are therefore left only with the question whether summary judgment should have been granted. This question turns upon the competency of Dr. Deutsch as an expert witness.[2] His competency depended upon two issues: (1) whether Evid.R. 601(D) requires a physician to devote 50% of his professional time to active clinical practice at the time he testifies, as opposed to at the time he has first reviewed the case, and (2) regardless of the answer to the first issue, whether the competency of the physician can be established by representations of counsel, as an officer of the court, rather than by an affidavit based upon personal knowledge.
 {¶ 19} Initially, we note that this court has not ruled on the first issue, although we have observed that Evid.R. 601(D) "should not be applied in a manner to subvert its purpose or make proof of malpractice unduly burdensome." Sharp v. Munda (June 20, 1990), 1st Dist. Nos. C-890227 and C-890228. To this end, the Second Appellate District has held, under the previous version of Evid.R. 601(D),[3] that the trial court abused its discretion by ruling incompetent the testimony of a retired physician who had treated the plaintiff for the injury that was the source of the lawsuit. Crosswhite v. Desai (1989),64 Ohio App.3d 170, 179, 580 N.E.2d 1119, motion to certify the record overruled (1990), 49 Ohio St.3d 708, 551 N.E.2d 1304. But other districts have held that Evid.R. 601(D) must be construed "according to the rules of grammar and common usage," and that, in lieu of the specific language requiring that the physician "devote" 50% of his professional time to active clinical practice, "the pertinent time frame in which Evid.R. 601(D) applies is at the time of testimony." Lovejoy v.Hopkins, 9th Dist. No. 20490, 2001-Ohio-1367; see, also,Ratliff v. Stewart (July 24, 1989), 12th Dist. No. CA88-07-109. As noted by the court in Crosswhite, the practical effect of a grammarian's interpretation may subvert the purpose of the rule to insure the witness's competence by permitting "the testimony of a novice currently in practice yet exclud[ing] the testimony of an experience clinical practitioner who is not." Crosswhite,
supra, at 179, 580 N.E.2d 1119.
 {¶ 20} Debate over the proper interpretation of Evid.R. 601(D) is without purpose, however, unless it can be said that the estate submitted proper evidence that Dr. Deutsch at some point satisfied the rule. Here, the estate clearly realized that in Dr. Deutsch's most recent affidavit, in which he indicated that he had devoted only 25% of his professional time to active clinical practice, he failed to establish himself as a competent expert witness under Evid.R. 601(D). At that point, the estate could have requested leave of court to supplement the affidavit or to file further affidavits under Civ.R. 56(F). That section provides, "Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained * * *."
 {¶ 21} Rather than attempting to submit a corrective affidavit, however, the estate sought to cure the deficiency in Dr. Deutsch's affidavit by a memorandum with Dr. Deutsch's curriculum vitae attached. The memorandum was not in affidavit form and was not based upon personal knowledge. And the curriculum vitae did not go into detail regarding the percentage of professional time that Dr. Deutsch had devoted to active clinical practice.
 {¶ 22} Civ.R. 56(E) requires that all supporting and opposing affidavits "shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit." It has been held that a plaintiff's failure to establish the competency of its medical expert under Evid.R. 610(D) is proper grounds for summary judgment, and that the failure to take timely corrective measures to establish competency under the rule, when that information is available to the plaintiff at the time the response to the motion is prepared, does not constitute "excusable neglect" for the purposes of vacating the judgment.Stuller v. Price, 10th Dist. Nos. 02AP-29 and 2AP-267, 2003-Ohio-583. Here, although Kurlansky attempted to cure the defect in Dr. Deutsch's affidavit, he failed to do so according to the dictates of Civ.R. 56(C), which requires that summary judgment be rendered on the "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact." The same rule states that "[n]o evidence or stipulation may be considered except as stated in this rule." Even if Kurlansky had made the statements he did in affidavit form, they would not have been based upon personal knowledge under Civ.R. 56(E). The only way he could have cured the defect in Dr. Deutsch's affidavit was to acquire another affidavit from Dr. Deutsche attesting to the percentage of his practice that he had formerly devoted to active clinical care. This Kurlansky did not do, nor did he ask for a continuance to do so.
 {¶ 23} Therefore, the judgment of the trial court is affirmed.
Judgment affirmed.
Gorman, P.J., Painter and Sundermann, JJ.
[1] Counsel for Dr. Blythe represents in her brief, however, that the effect of the estate's motion for a continuance was that the April 3, 2001, hearing scheduled on the doctor's summary-judgment motion was continued until April 16, 2001. The record does not contain a transcript of that hearing.
[2] The parties do not address in their briefs the adequacy of Dr. Deutsch's opinion to create triable issues of fact.
[3] The previous version of Evid.R. 601(D) required that the testifying physician "devote three-fourths of his professional time to the active clinical practice" in his field of licensure.