[Cite as *O'Malley v. Forum Health*, 2013-Ohio-2621.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**TRUMBULL COUNTY, OHIO**

| | | |
|---|---|---|
| ANN M. O'MALLEY, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE HEIRS AND ESTATE OF WILLIAM JAMES O'MALLEY, DECEASED, | : : : | **O P I N I O N** |
| | : | **CASE NO. 2012-T-0090** |
| Plaintiff-Appellee/ Cross-Appellant, | : | |
| | : | |
| - vs - | : | |
| | : | |
| FORUM HEALTH, d.b.a. FORUM HEALTH TRUMBULL MEMORIAL HOSPITAL, et al., | : | |
| | : | |
| Defendants-Appellants/ Cross-Appellees. | : | |

Civil Appeal from the Trumbull County Court of Common Pleas.
Case No. 2007 CV 2205.

Judgment: Affirmed.


*Dennis P. Zapka* and *David H. Boehm*, McLaughlin Law, LLP, 1111 Superior Building, Suite 1350, Cleveland, OH 44114-2500 (For Plaintiff-Appellee/Cross-Appellant).

*Thomas J. Wilson*, Comstock, Springer & Wilson Co., L.P.A., 100 Federal Plaza East, Suite 926, Youngstown, OH 44503-1811 (For Defendants-Appellants/Cross-Appellees).


TIMOTHY P. CANNON, P.J.

{¶1}   Appellants/Cross-Appellees Mohammed Rashid, M.D., and Forum Health,

d.b.a. Forum Health Trumbull Memorial Hospital, appeal the Trumbull County Court of

Common Pleas' judgment after a jury verdict in favor of Appellee/Cross-Appellant Ann

M. O'Malley, individually and as personal representative of the heirs and estate of William James O'Malley, deceased. Appellants also appeal the judgment denying a motion for new trial. Appellants claim the trial court abused its discretion in finding Dr. Louis Flancbaum competent to testify as an expert witness under Evid.R. 601(D) because he did not devote one-half of his professional time to the active clinical practice of medicine at the time he offered his testimony. Appellants contend Dr. Flancbaum's testimony was improper and prejudicial and, therefore, request this court remand the matter for a new trial. The issue on appeal is whether a trial court may find a witness competent to offer expert testimony regarding the liability of a physician in a medical malpractice case if that witness, at the time of testimony, does not devote one-half of his professional time to the active clinical practice of medicine. Appellee/Cross-Appellant appeals the judgment denying a motion in limine, which sought to exclude expert testimony on behalf of appellants from Dr. Neuenschwander.

{¶2} Courts throughout Ohio, including this one, have read the "active clinical practice" requirement of Evid.R. 601(D) flexibly. After examining Dr. Flancbaum's length of practice, extensive experiential background, special experience in trauma care, continuing education, and the fact he was engaged in active clinical practice at the time relevant to the lawsuit, we conclude, in accordance with the purpose and function of Evid.R. 601(D), the trial court did not abuse its discretion in allowing Dr. Flancbaum to testify and in denying a new trial. This conclusion renders the cross-appeal moot. For the reasons more fully set forth below, the judgment is affirmed.

{¶3} On August 29, 2007, Ms. O'Malley filed this medical malpractice action seeking damages for, inter alia, negligence and wrongful death. The allegations

stemmed from decedent William O'Malley's September 1, 2006 visit to Trumbull Memorial Hospital emergency room. Mr. O'Malley, age 70, was transported to the emergency room at approximately 6:00 p.m., complaining of acute chest pain following a fall two days prior which resulted in multiple rib fractures. While at the emergency room, numerous tests were performed on Mr. O'Malley that, as Ms. O'Malley's experts would explain, suggested the existence of blood in the patient's chest. When resuscitation efforts commenced hours after the lab test results were available, Mr. O'Malley suffered significant hemorrhage in his left chest cavity which resulted in fatal internal blood loss.

{¶4} Following extensive discovery, including numerous motions in limine, the matter proceeded to trial. During trial, Ms. O'Malley presented, over objection, the videotaped testimony of Dr. Flancbaum as an expert witness. Dr. Flancbaum's testimony indicated that Dr. Rashid, a Trumbull Memorial emergency room physician who treated Mr. O'Malley, deviated from the applicable standard of care and that Mr. O'Malley's death was, in fact, preventable. Dr. Flancbaum opined that Dr. Rashid failed to recognize the severity of Mr. O'Malley's injuries based on lab test results that were available at the time Dr. Rashid first appeared at Mr. O'Malley's bedside; i.e., that the patient was hemorrhaging blood and was technically in hemorrhagic shock upon arrival. Dr. Flancbaum additionally explained that Dr. Rashid failed to address Mr. O'Malley's injuries with proper and timely treatment. Appellants cross-examined Dr. Flancbaum and attacked the credibility of his opinion.

{¶5} Ms. O'Malley also presented the expert testimony of Dr. Samuel Kiehl, who similarly testified that Dr. Rashid failed to recognize the severity of the trauma demonstrated by the test results and failed to respond accordingly.

{¶6} The jury returned its verdict in favor of Ms. O'Malley and against Dr. Rashid and Forum Health in the amount of $556,779.15. The trial court entered judgment for Ms. O'Malley on April 27, 2012.

{¶7} Shortly thereafter, numerous post-verdict motions were filed. Appellants filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial, which was denied. Ms. O'Malley filed a motion for prejudgment interest which, via October 18, 2012 judgment entry, was dismissed without prejudice.

{¶8} On November 6, 2012, appellants filed their notice of appeal, seeking to challenge the trial court's judgment on the verdict and judgment denying a new trial. We note this appeal is timely, as "[a] journalized jury verdict is not a final, appealable order when a motion for prejudgment interest has been filed and remains pending." *Miller v. First Internatl. Fid. & Trust Bldg.*, 113 Ohio St.3d 474, 2007-Ohio-2457, syllabus.

{¶9} Appellants assert a single assignment of error for consideration by this court, which states:

{¶10} "The trial court committed prejudicial error in allowing the testimony of plaintiff's expert, Dr. Louis Flancbaum, over Dr. Rashid's objection."

{¶11} Under their sole assignment of error, appellants raise two issues. They first contend the trial court abused its discretion in allowing Dr. Flancbaum to testify as an expert when he did not devote any of his time to the active clinical practice of

4

medicine at the time of trial, purportedly in contravention of Evid.R. 601(D). Appellants further contend this alleged abuse of discretion resulted in improper and prejudicial testimony such that the trial court should have granted a new trial pursuant to Civ.R. 59(A)(6) ("judgment is not sustained by the weight of the evidence") and Civ.R. 59(A)(9) (error of law, Evid.R. 601(D)). Appellants request this court reverse the judgment and remand the matter for a new trial.

{¶12} In response, Ms. O'Malley argues the evidentiary ruling was not an abuse of discretion, highlighting Dr. Flancbaum's extensive experiential background, his special experience, his one-half professional time devotion to active clinical practice at the time the action accrued, and the general principle, best stated by Wigmore, that "[t]he retirement from active practice involves no disqualification." 7 Wigmore, *Evidence*, Section 687, at 3, fn.1 (Chadbourn Rev.1978).

{¶13} Evidentiary rulings, including whether a witness is competent to testify as an expert, are entrusted to the sound discretion of the trial court. *Alexander v. Mt. Carmel Medical Center*, 56 Ohio St.2d 155, 157 (1978). As such, the standard of review is whether the trial court abused its discretion in its ruling. *Id.* An abuse of discretion is defined as the "failure to exercise sound, reasonable, and legal decision-making." *Black's Law Dictionary* 11 (8th Ed.2004).

{¶14} Evid.R. 601(D) governs whether a particular witness is competent to testify in a malpractice action as an expert. As originally enacted, Evid.R. 601(D) derived from provisions of former R.C. 2743.43 and provided that a person was competent to testify as an expert in a medical malpractice case if he was (1) licensed by a state medical board and (2) devoted at least three-fourths of his time to the practice of

5

medicine. In 1991, the Rule was amended, reducing the "three-fourths" requirement to "at least one-half."

{¶15} Evid.R. 601(D) now states, in pertinent part:

{¶16} Every person is competent to be a witness except:

{¶17} * * *

{¶18} (D) A person giving expert testimony on the issue of liability in any claim asserted in any civil action against a physician, podiatrist, or hospital arising out of the diagnosis, care, or treatment of any person by a physician or podiatrist, unless the person testifying is licensed to practice medicine and surgery, osteopathic medicine and surgery, or podiatric medicine and surgery by the state medical board or by the licensing authority of any state, and unless the person devotes at least one-half of his or her professional time to the active clinical practice in his or her field of licensure, or to its instruction in an accredited school. * * *

{¶19} Thus, in order to be competent to testify, an expert in a medical malpractice case must be licensed in one of the above-specified fields and must devote at least one-half of his time to the active clinical practice of medicine in his specific field, or its instruction in an accredited school. "Active clinical practice," however, is not defined.

{¶20} In this case, there is no dispute that the matter is a civil medical malpractice action against a physician and hospital. *See Brannon v. Austinburg Rehab. v. Nursing Ctr.*, 190 Ohio App.3d 662, 2010-Ohio-5396 (11th Dist.) (Evid.R. 601 does

not apply in cases of ordinary negligence). There is also no dispute that Dr. Flancbaum presented expert testimony on *the issue of liability. See Melvin v. Ohio State Univ. Med. Ctr.*, 10th Dist. No. 10AP-975, 2011-Ohio-3317, ¶30 (Evid.R. 601(D) did not apply where expert witness did not offer an opinion on duty, standard of care, or breach of duty). Additionally, there is no dispute that Dr. Flancbaum is licensed to practice medicine in the state of New York. The only challenge to Dr. Flancbaum's testimony as an expert is the contention that he did not devote, at the time of his testimony, at least one-half of his professional time to the active clinical practice in his field of licensure, or to its instruction in an accredited school.

{¶21} The question, therefore, is whether a trial court may find a witness competent to offer expert testimony on the issue of a physician's liability in a medical malpractice case when that witness, at the time of the testimony, does not devote one-half of his professional time to the active clinical practice of medicine.

{¶22} The purpose of Evid.R. 601(D) is two-fold: (1) "to preclude testimony by the physician who earns his living or spends much of his time testifying against his fellows as a professional witness," and (2) to "prevent those whose lack of experiential background in the very field they seek to judge, [i.e.,] the clinical practitioner, * * * from expressing their opinions for pay or otherwise." *McCrory v. State*, 67 Ohio St.2d 99, 159 (1981). Stated differently, the rule seeks to eliminate "the basic unfairness of permitting the pointing of accusatory fingers by those who do not take care of the sick toward those who do." *Id.* However, the purpose of Evid.R. 601(D) is *not* to make proof of a medical claim more difficult. *Crosswhite v. Desai*, 64 Ohio App.3d 170, 177 (2d Dist.1989). Indeed, the burden of proof in a medical malpractice case is naturally

7

increased due to the nature of the claim itself and the fact that "expert testimony is ordinarily needed to establish the requisite standard of care and skill a physician owes in his treatment of a patient." *Hoffman v. Davidson*, 31 Ohio St.3d 60, 62 (1987); *Crosswhite* at 177. The limitations imposed by Evid.R. 601(D) "should not be applied so narrowly that the right of redress in a medical claim collapses under an undue burden." *Crosswhite* at 178.

{¶23} In consideration of the purpose and spirit of Evid.R. 601(D), the requirement that the clinical practice be presently active has been read flexibly by courts throughout Ohio, resulting in two principles of application.

{¶24} First, "active clinical practice" does not solely apply to the administration of care by an active clinic practitioner. In *McCrory v. State*, *supra*, a person who did medical research and supervised a staff of research doctors was competent under Evid.R. 601(D) to testify about a drug he previously examined. The Court explained that the "active clinical practice" requirement "also includes the physician-specialist whose work is so related or adjunctive to patient care as to be necessarily included in that definition for the purpose of determining fault or liability in a medical claim." *Id.* at syllabus.

{¶25} Second, a witness who does not devote at least one-half of his professional time to active clinical practice *at the time of trial* can nonetheless still be found competent to testify, provided there are specific facts that establish the witness' competency. The Second Appellate District in *Crosswhite*, *supra*, warned against the dangers of interpreting the applicable rule and statute, which are written in the present tense, too strictly or too literally:

8

**{¶26}** A literal and strict interpretation of the statute focusing only on the present ignores the historical nature of the inquiry and the true purpose of the statute. It might even permit the testimony of a novice currently in practice yet exclude the testimony of an experienced clinical practitioner who is not. It would not serve the purposes of the statute or the ends of justice to exclude the assistance of the experienced specialist whose clinical practice spanned decades, because he is now retired. The true purpose of the statute is to ensure competency, and a strict application of the text in its literal sense fails to do that. *Id.* at 178.

**{¶27}** Rather, the court explained the essential inquiry is whether the witness acquired that "special knowledge" or "experiential background" in the field he seeks to judge. *Id.* In *Crosswhite*, the trial court excluded a retired physician's testimony under Evid.R. 601(D). The Second District reversed, explaining that the retirement from medical practice, standing alone, is not an impediment to competence. The physician in *Crosswhite* had been engaged in the clinical practice of medicine for 33 years and, though he was retired, remained licensed to practice medicine. The clinical experience envisioned by the rule is present "if the witness is engaged or has been engaged in an active clinical practice[.]" *Id.* at 179.

**{¶28}** In *Celmer v. Rodgers*, 11th Dist. No. 2004-T-0074, 2005-Ohio-7054, ¶24, this court applied and followed *Crosswhite*, holding that Evid.R. 601(D) indeed permits flexibility in determining whether an expert meets its requirements. The Ohio Supreme

9

Court granted discretionary review of *Celmer* and affirmed the judgment. *Celmer v. Rodgers*, 114 Ohio St.3d 221, 2007-Ohio-3967. There, the Court explained:

{¶29} Evid.R. 601(D) uses the present tense in providing that a person is unable to offer medical expert testimony unless that person is licensed to practice medicine and *devotes* at least one-half of his or her professional time to active clinical practice. This, however, does not preclude a trial court from exercising discretion in an appropriate case to determine that a physician is competent to testify[.]

{¶30} The Supreme Court concluded: "Given the specific facts of this case and Dr. Thompson's competency to testify as an expert at the originally scheduled March 2002 trial, his disengagement from the active clinical practice of medicine prior to the May 2004 trial date did not render him incompetent to testify." *Id.* at ¶27. Stated differently, "[o]n these facts, Thompson's hiatus from the practice of medicine should not render him incompetent to testify in this matter and does not cause him to become a 'professional witness.'" *Id.* at ¶26. The Court characterized the existence of "specific facts" as an exception to the strict language of Evid.R. 601(D). *Id.* at ¶27.

{¶31} Additionally, in *Aldridge v. Garner*, 159 Ohio App.3d 688, 2005-Ohio-829, ¶18 (4th Dist.), though a physician did not devote one-half of his time to active clinical practice at the time his testimony was offered, the Fourth Appellate District found his experiential background rendered him competent to testify under Evid.R. 601(D): "Based upon Dr. Kirwin's length of practice, and the fact that Dr. Kirwin was engaged in active clinical practice at all times relevant to the lawsuit against Garner, we find that Dr.

10

Kirwin's experience satisfies the purpose intended by the active clinical practice rule."
*Id.*

**{¶32}** Similarly here, given the specific facts of this case, it cannot be concluded the trial court abused its discretion in finding Dr. Flancbaum competent to testify.

**{¶33}** First, there is the matter of Dr. Flancbaum's extensive experiential background, including his special experience in trauma care. The record established that Dr. Flancbaum has practiced medicine for over 30 years, much of which was devoted to trauma care: he spent a five-year surgical residency at University of Illinois Hospitals, a component of which focused in trauma services, and completed a one-year fellowship in trauma surgery and critical care at the Maryland Institute for Emergency Medical Service Systems. He held a five-year tenure at Robert Wood Johnson Medical as a trauma attending and critical care attending surgeon, during which time he was actively involved in the establishment of a level-one trauma center. Later in his career, Dr. Flancbaum was the chief of the trauma critical care section at the Ohio State University Hospital, a level one trauma center, and site director at St. Luke's Hospital, also a level one trauma center, where he was active in trauma service through 2004. Dr. Flancbaum also authored roughly 25 to 30 papers—25% of his entire publications—in the field of trauma care, and was an active faculty member for the American College of Surgeon's advanced trauma life support course.

**{¶34}** Next, Dr. Flancbaum still devoted one-half of his professional time to the active clinical practice at the time the cause of action accrued. Specifically, during the time of Mr. O'Malley's emergency room visit, as well as at the end of 2006, Dr. Flancbaum was still continuing to provide critical care services. Dr. Flancbaum testified

11

that, at the end of 2006, 50% of his time was devoted to critical care, both surgical and non-surgical, at North Shore University Hospital. Dr. Flancbaum retired shortly thereafter, in May 2007, as a result of being afflicted with Parkinson's Disease.

**{¶35}** Finally, though not administering care at the time of his testimony, the record illustrates that Dr. Flancbaum continues to follow medical literature, continues to attend medical conferences on a semi-regular basis, and maintains an active medical license in the state of New York.

**{¶36}** Thus, based upon the specific facts of this case, including Dr. Flancbaum's length of practice, extensive experiential background, special experience in trauma care, continuing education, and the fact he was engaged in active clinical practice at the time the cause of action accrued, we conclude the trial court did not abuse its discretion in allowing Dr. Flancbaum to testify. This holding is in accordance with the purpose and function of Evid.R. 601(D).

**{¶37}** As a result, appellants' second issue is also without merit. Even without Dr. Flancbaum's testimony, the evidence is still sufficient to support a verdict against appellants to withstand a motion for a new trial pursuant to Civ.R. 59(A)(6). The testimony from Ms. O'Malley's other expert witness, Dr. Samuel Kiehl, also established that Dr. Rashid breached the standard of care, the result of which proximately caused Mr. O'Malley's death.

**{¶38}** Dr. Kiehl opined that the standard of care was breached in many ways. First, Dr. Rashid failed to recognize that the patient's condition required the highest level of trauma, rather than a second-level trauma response. Dr. Kiehl explained, just as Dr. Flancbaum, that there was an inappropriate response to Mr. O'Malley's abnormal lab

12

and radiologic studies which were available to Dr. Rashid shortly after 7:00 p.m. A chest x-ray showed fluid on the left side of Mr. O'Malley's chest where he had broken his ribs. A computed tomography scan (CT scan) of the chest, abdomen, and pelvis localized the problem to the chest, as that area showed a complex fluid with particulate matter, suggesting the presence of blood (rather than water). Blood gas, hemoglobin, and hematocrit test results also were indicative of a patient entering shock. Additionally, patient diagnostic readings indicated Mr. O'Malley had serious anemia, moderate acidosis, low blood pressure, and low blood count. The patient history report detailed Mr. O'Malley's recent fall and his broken ribs, which should have been taken into account due to the known medical correlation between broken ribs and blood entering the chest. Dr. Kiehl explained that, taken together, these results indicate the patient is in hemorrhagic shock. Dr. Flancbaum testified to the same points, noting that the results indicate Mr. O'Malley suffered a massive hemothorax, meaning that blood was present in the plural cavity of the chest.

{¶39} Dr. Kiehl opined, just as Dr. Flancbaum did, that the response to these results should have been immediate resuscitation and intervention; i.e., the patient needed crystalloid fluid, blood as quickly as possible, and a chest tube to drain existing blood and inflate the lungs. Dr. Kiehl also noted a Foley catheter to monitor urine output, which would correlate to indications of blood volumes, should have been administered, though Dr. Flancbaum did not mention such a specific catheter treatment.

{¶40} Dr. Kiehl went into much detail concerning the specific failure to place a chest tube for therapy and monitoring purposes, as did Dr. Flancbaum. Dr. Kiehl explained the chest tube is a relatively simple procedure where a tube is placed into the

13

patient's chest so the fluid can be drained.  A chest tube placement is necessary given that a significant amount of blood in the chest compromises the patient's ability to breathe appropriately and can also cause the lung to compress, thereby impeding its ability to provide adequate respiration.  Following drainage from a chest tube, Dr. Kiehl noted the fluid volume should be measured and the tube should remain to monitor any ongoing bleeding.

{¶41} Dr. Kiehl noted that, in this case, a chest tube was "appropriate and indicated" by the lab tests that came back around 7:00 p.m.  He also noted that a bolus of fluids should have been introduced at the time of the first low blood pressure reading, at around 6:30 p.m.  Though appellants claim otherwise, Dr. Flancbaum was, in fact, less specific with the timing aspect of a chest tube placement, merely noting that the later the bleeding is noticed, the more compromise there is to the organs in the body and the less chance of a successful outcome.

{¶42} Dr. Kiehl similarly set forth the apparent danger in delaying these responses to the diagnostic information: the longer a patient remains in shock due to blood hemorrhaging, the more likely they will die.  Fluid resuscitation must be initiated when early signs and symptoms of blood loss are apparent or suspect, not when the blood pressure is falling or absent—this is basic trauma management according to Dr. Kiehl's testimony.

{¶43} Thus, though there were minor permutations between their testimony, both experts testified to the same material points: (1) the failure to recognize the severity of the trauma and designate the proper trauma response; (2) the inappropriate response to the numerous tests and studies, including the CT scan illustrating a

14

complex fluid, the chest x-ray showing fluid, the patient's vitals, and the existence of broken ribs; (3) the inappropriately slow fluid resuscitation, including the failure to introduce a bolus of fluids as a temporizing measure before determining more definitive interventions; (4) the inadequate and slow administration of blood; and (5) the failure to place a chest tube.

{¶44} We therefore cannot conclude the trial court abused its discretion in denying the motion for a new trial, even if Dr. Flancbaum's testimony was entered in error, because Dr. Kiehl essentially testified to the same material points.

{¶45} Appellants' sole assignment of error is without merit.

{¶46} Appellee/Cross-Appellant Ms. O'Malley asserts one assignment of error, which states: "The trial court committed prejudicial error in allowing the testimony of appellant's expert, Dr. James Neuenschwander, over appellee's objection."

{¶47} Given the above-framed analysis, the cross-appeal is moot.

{¶48} The judgment of the Trumbull County Court of Common Pleas is affirmed.


CYNTHIA WESTCOTT RICE, J.,

COLLEEN MARY O'TOOLE, J.,

concur.

15